**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners, | |
| Plaintiff, | Civil Action No. 2:22-cv-00077-LGW-BWC |
| v. | |
| UNION CARBIDE CORPORATION, | |
| Defendant. | |

**DEFENDANT UNION CARBIDE CORPORATION'S SUPPLEMENTAL
BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Defendant Union Carbide Corporation ("UCC") files this Supplemental Brief in further support of its Motion to Dismiss.

## I.   INTRODUCTION

UCC submits this supplemental brief to address two points following the January 17, 2023 hearing on UCC's Motion to Dismiss: (1) the Referendum, absent a court order invalidating or staying its effect, constituted a repudiation of the Option Agreement because it had the effect of law once certified; and (2) O.C.G.A. § 36-10-1 required the actual Option Agreement to be put in the BOC's minutes to be enforceable.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

**A.    The Referendum Constituted a Repudiation of the Option Agreement Because It Had the Effect of Law Once Certified, Absent a Court Order Invalidating or Staying Its Effect.**

The Referendum had the force and effect of law once the voters approved it and the probate court certified the results to the Secretary of State.  Article IX, § II, Paragraph I(b)(2) of the Georgia Constitution states, "If more than one-half of the votes cast on such question are for approval of the amendment or repeal, *it shall become of full force and effect*; otherwise, it shall be void and of no force and effect." (emphasis added.) Paragraph I states that the only procedural requirements for an approved amendment or revision to take effect are that the probate court must (1) "certify the result thereof to the Secretary of State in accordance with the provisions of subparagraph (g)," and (2) file the following with the Georgia Secretary of State: a copy of the amendment or revision, a copy of the notice of publication required by subparagraph (b), and an affidavit of an authorized representative of the newspaper that published the notice stating that the notice was published in compliance with subparagraph (b).  Ga. Const. Art. IX, § II, Para. I(b)(2) and (g).

All of this happened for the Referendum:  (1) the Camden County voters approved the Referendum by more than 50% of the votes on March 8, 2022; and (2) the probate court certified the election results and provided copies of the Referendum, the required notice of publication and the required affidavit to the

Secretary of State on March 10, 2022.  [Dkt. 1-1 at ¶ 27; Dkt. 18-5.]  Thus, according to Article IX, § II, Paragraph I, of the Georgia Constitution, the Referendum was in "full force and effect" as of March 10, 2022, and through and including July 11, 2022 (the date by which BOC alleges Union Carbide's performance was due).

Importantly, the Referendum did not lose its force and effect simply because the BOC filed a legal challenge to it in the superior court and subsequently appealed its loss of that challenge.  Rather, as the BOC acknowledged when it moved the Georgia Supreme Court for an emergency stay of the probate court's certification of the Referendum on March 8, 2022 (which the Georgia Supreme Court denied), judicial intervention through a stay or injunction order was necessary to prevent the Referendum from taking effect.[1]  [Dtk. 1-1 at ¶¶ 25, 27; Dkt. 18-10.]  And, at the time the BOC claims UCC's performance was due, *every* court that the BOC had asked to invalidate or stay the Referendum declined to do so.

Thus, as a matter of law, the Referendum had legal force and effect and was binding on the County at the time UCC's performance allegedly was due.  UCC was therefore right and justified in treating it as such in not proceeding with the sale of

---

[1] Notably, had the BOC filed a proper appeal of the probate court's authorization or certification of the Referendum under O.C.G.A. § 5-4-1 *et seq.* or O.C.G.A. § 5-3-2(a), the probate court's certification of the Referendum would have been automatically stayed by supersedeas.  O.C.G.A. §§ 5-4-19, 5-3-22(b).  But the BOC did not file such an appeal.  Thus, no supersedeas applied.

its Property to the County. At that time, the Option Agreement stood repudiated by the Referendum, which eliminated the County's authority to have the Option Agreement and purchase the Property. The outcome of the BOC's appellate challenge to the Referendum in the Georgia Supreme Court months later will not change those circumstances that existed *at the time UCC's performance was allegedly due*. Therefore, UCC was not in breach of the Option Agreement for not selling the Property to the County.

**B.   O.C.G.A. § 36-10-1 Required the Actual Option Agreement to be Put in the BOC's Minutes to be Enforceable.**

O.C.G.A. § 36-10-1 states, "All contracts entered into by the county governing authority with other persons in behalf of the county shall be in writing and entered *on* its minutes." (emphasis added). This clearly means that the actual contract terms have to be in the minutes. Georgia appellate decisions repeatedly have stated this requirement. *E.g.*, *Malcolm v. Fulton Cnty.*, 209 Ga. 392, 399 (1952) (a county contract is "rendered unenforceable until it is recorded" in the minutes); *Killian v. Cherokee Cnty.*, 169 Ga. 313, 320 (1929) (contract required to be "spread upon the minutes"); *King v. Casey*, 164 Ga. 117, 119-20 (1927) (finding that a contract with Camden County was enforceable because the lower court had ordered the county to enter "*all plans and specification* referred to in the contract" on the minutes) (emphasis added); *Spalding Cnty. v. Chamberlin & Co.*, 130 Ga. 649, 653 (1908) ("*all material portions* of the contract agreed upon *shall be in writing and*

4

*appear on the minutes*.") (emphases added); *Moore v. Baker*, 85 Ga. App. 234, 237 (1952) (holding that a county contract was not enforceable because it was not "placed upon the minutes of the [county] commissioners"); *see also Ogletree v. Chester*, 682 F.2d 1366, 1370 (11th Cir. 1982) ("Under Georgia law, any contract entered into with other persons in behalf of a county must be in writing and *spread on the official minutes of the Commission.* Ga. Code Ann. § 23-1701 [now O.C.G.A. § 36-10-1]. Where that procedure is not followed, there is no enforceable agreement.") (emphasis added).

> As the Georgia Supreme Court explained:

> The object of the law requiring an entry of such contracts upon the minutes is to give information, easily accessible to the public, as to the character of contracts being made by county authorities. The taxpayers of the county are entitled to know, not only for what purpose their money is being disbursed, but the amount thereof that is to be extended for a given purpose, if any amount is agreed upon; and this statute intended to provide a source from which such information could be reliably obtained, -- that is, through the medium of *the contract itself spread upon the public records of the county*.

*Spalding Cnty.*, 130 Ga. at 652 (emphasis added). Merely referencing a contract and the vote to approve it in the minutes does not satisfy that objective.

Here, the BOC did not include the terms of the Option Agreement in its minutes. [Dkt. 18-1.] Consequently, the Option Agreement is not enforceable and cannot be a basis for a breach of contract claim against UCC for this additional reason.

### III.   CONCLUSION

For these reasons and those presented in UCC's Motion to Dismiss and Reply Brief, the County's Complaint fails to state claims upon with relief can be granted. The Court therefore should dismiss the County's Complaint under Rule 12(b)(6).

Respectfully submitted this 24th day of January, 2023.

/s/ *W. Clay Massey*
Georgia Bar No. 476133
Clay.massey@alston.com
*Admitted Pro Hac Vice*
Douglas S. Arnold
Georgia Bar No. 023208
Doug.arnold@alston.com
*Admitted Pro Hac Vice*
Shannon N. Vreeland
Georgia Bar No. 472552
Shannon.vreeland@alston.com
*Admitted Pro Hac Vice*
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Office:  (404) 881-7000
Fax:  (404) 881-7777

-and-

*James A. Bishop*
James A. Bishop
Georgia Bar No. 058600
jbishop@bishopfirm.com
THE BISHOP LAW FIRM
465 Sea Island Road
St. Simons Island, GA 31522
Telephone: (912) 264-2390
Facsimile: (912) 264-5859
*Counsel for Defendant Union Carbide Corporation*

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners, | |
| Plaintiff, | Civil Action No. 2:22-cv-00077-LGW-BWC |
| v. | |
| UNION CARBIDE CORPORATION, | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing DEFENDANT UNION CARBIDE CORPORATION'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS via the Court's CM/ECF filing system, which will automatically send electronic notice to all attorneys of record.

This 24th day of January, 2023.

/s/ *Shannon Vreeland*
Shannon N. Vreeland