## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners,<br><br>    Plaintiff,<br><br>v.<br><br>UNION CARBIDE CORP.<br><br>    Defendant. | CIVIL ACTION FILE NO.<br><br>2:22-CV-00077-LGW-BWC |

### PLAINTIFF'S POST-HEARING BRIEF

In accordance with the Court's instructions at the hearing on January 17, 2023, Plaintiff Camden County, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners ("Camden County" or "Plaintiff"), files this post-hearing brief to further address the questions and arguments raised during the hearing on the Motion to Dismiss by Defendant Union Carbide Corporation ("Union Carbide" or "Defendant").  [Doc. 18].

**I.     The Pending Decision of the Georgia Supreme Court Is Not Inconsequential to the Claims in this Lawsuit.**

During the hearing, counsel for Union Carbide argued that Union Carbide has no liability—even if the Georgia Supreme Court finds the referendum to be a

nullity—because the Board of Commissioners lacked the authority to close at the time of performance specified in the contract.  (Tr. at 9:5-8, 15-18; 40:8-10, 18-25.)  Contrary to the argument of Union Carbide's counsel, the express terms of the Option Agreement did not require the parties to close within a narrow 90-day window (July 11, 2022), but instead allowed the parties to extend the closing date to "**such other date as the parties may mutually agree in writing**."  (Compl. Ex. A § 2(E)) (emphasis added).  As is common in real estate transactions, the parties contemplated the possibility of delay and agreed that extensions of the closing deadline would be permitted.

In its letter dated June 8, 2022, Camden County maintained that it had the authority and was willing and ready to close on the transaction, but in the alternative urged Union Carbide to extend the closing date, stating that such an extension would be the "prudent course for both parties by preserving the status quo . . . [i]n the event the Georgia Supreme Court nullifies the referendum." (Compl. Ex. H at 3.)  In response, Union Carbide refused to proceed with the closing or extend the closing deadline, insisting that Camden County had "repudiated" the Option Agreement.  (Compl. Ex. I at 2.)  Union Carbide made the unilateral determination that the Option Agreement had been "repudiated," despite

the pending appeal of the referendum and the possibility of reversal, based on its own legal assessment that "the County's success in that case appears doubtful." (*Id.*)

Under Georgia law, Union Carbide cannot by its own conduct use impossibility as an excuse for non-performance.  "A party to a contract can not cause a breach or delay in compliance by the other, and then set up the breach or delay so caused as freeing him from the contract."  *English v. Muller*, 270 Ga. 876, 876 (1999).  In the event the Georgia Supreme Court declares that the referendum was unconstitutional, Union Carbide will only have itself to blame for its premature (and incorrect) legal determination that "there is no longer an Option for the County to exercise" and its refusal to proceed with the closing or extending the closing deadline.  (Compl. Ex. G.)  Union Carbide's decision to bet against Camden County's arguments—if that bet turns out to be wrong—does not excuse Union Carbide from its contractual obligations, nor does it absolve Union Carbide from liability.[1]

---

[1] Although not specifically addressed at the hearing, Camden County also asserted a separate claim for breach of the implied covenant of good faith and fair dealing, under which Union Carbide had a duty of good faith to extend the deadline for closing, so as not to defeat the fundamental purpose of the contract.  (Compl. ¶ 74); *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.*, 291 Ga. App. 808, 812 (2008), *disapproved on other grounds*, 339

Union Carbide, who at all times was represented by capable counsel, was not without a legal remedy when Camden County exercised its option rights during the pendency of the appeal before the Georgia Supreme Court.  (Tr. 12:19-21) ("What is it supposed to do?")  In addition to the availability of an extension of the closing deadline under Section 2(E) of the Option Agreement, Union Carbide could have protected itself from making an incorrect legal determination of the outcome of the appeal by seeking a declaratory judgment.  O.C.G.A. § 9-4-2; *GeorgiaCarry.org v. Atlanta Botanical Garden, Inc.*, 299 Ga. 26, 28 (2016) (declaratory judgment appropriate where declaration of rights is necessary "to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct") (quotation omitted).  Rather than seek a declaration of its legal obligations, Union Carbide relied on its own self-serving assessment that Camden County's arguments on appeal were "doubtful on the merits and procedurally."  (Compl. Ex. I at 2.)  If Union Carbide guesses incorrectly—and the Georgia Supreme Court nullifies the referendum—Union Carbide must bear the consequences, legal or otherwise, of its breach of contract. *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 351 Ga. App. 117, 123-34 (2019)

---

Ga. App. 843 (2016) (lease agreement included implied duty by lessor to apply for zoning variance). ‼

(proper course when faced with unresolved dispute was to file declaratory judgment action; insurer's failure to do so was "fatal" to its claims).

In any event, there exists no prohibition against Union Carbide retracting its repudiation and proceeding with the closing of the transaction in the event the Georgia Supreme Court nullifies the referendum as unconstitutional. Contrary to the argument of Union Carbide's counsel, the time for performance has not passed. Pursuant to Section 2(E) of the Option Agreement, the parties may still close the transaction "on such other date as the parties may mutually agree in writing." (Compl. Ex. A § 2(E).) If Union Carbide is still unwilling to move forward and honor its contractual obligations, this Court can order specific performance as a remedy. (Compl. Ex. A § 11(B).)

Therefore, the pending decision by the Georgia Supreme Court is not moot or inconsequential to the claims and defenses in this case. As the Court recognized at the hearing, waiting until the Georgia Supreme Court decision that may address "the very question that is central to this lawsuit" would not only be sensible but promote judicial efficiency and comity between state and federal courts. *Branch Banking & Tr. Co. v. Hamby*, No. 2:15-CV-115, 2015 WL 13484345, at *2-4 (S.D. Ga. Nov. 9, 2015).

II.  **If the Option Agreement Is Illegal or Without Authorization, Camden County is Entitled to Recover All Payments from Union Carbide.**

Even accepting Union Carbide's arguments that the Option Agreement is illegal and without authorization—whether due to the referendum or the alleged failure to comply with O.C.G.A. § 36-10-1—Camden County is entitled to recover payments made to Union Carbide.  Contrary to arguments by Union Carbide, the voluntary payment doctrine does not preclude Camden County from recovering payments made to Union Carbide pursuant to a void contract.  At the hearing, counsel for Camden County referred the Court to two cases.  In the *Burke* case, the Georgia Court of Appeals held that the county was entitled to recover payments illegally paid to accountants, reasoning that "a wrongful payment made by a public officer is not a voluntary payment in so far as the public corporation is concerned." *Burke v. Wheeler Cnty.*, 54 Ga. App. 81 (1936).  Similarly, in *Howard*, the Georgia Court of Appeals affirmed the grant of summary judgment on the county's claim to recover payments made without authorization to a paint striping contractor, citing to *Burke* for the rule that "Where public funds are illegally paid out by county officials or by some agency of the county, it is proper for the county to bring a suit for the recovery of the same."  *Howard v. Brantley Cnty.*, 260 Ga. App. 330, 332 (2003).

There exists no principle in law or in equity that would allow Union Carbide to retain payments from Camden County in the event the Option Agreement is determined to be illegal—either by way of the referendum that purportedly repealed the Board of Commissioner's authority, or due to any alleged non-compliance with O.C.G.A. § 36-10-1.  The cases cited by Union Carbide are both distinguishable in that neither case dealt with recovery of funds paid by a county pursuant to an illegal contract.  *Montgomery Cnty. v. Sharpe*, 261 Ga. App. 389, 391 (2003) ("The present situation does not involve . . . the county's attempt to recover funds paid pursuant to a void contract."); *Twiggs Cnty. v. Oconee Elec. Membership Corp.*, 245 Ga. App. 231, 233 (2000) ("We also note . . . there is no claim the county exceeded its authority by entering into this contract.").  Because the referendum, if allowed to stand, "repealed" the resolutions of the Board of Commissioners that "authorized" the Option Agreement (Compl. ¶ 23), the *Burke* and *Howard* cases control and allow Camden County to recover payments made to Union Carbide pursuant to the voided contract.[2]

---

[2] In the alternative, if the referendum is nullified and the Option Agreement is allowed to stand, Union Carbide is barred from relying on any alleged non-compliance with O.C.G.A. § 36-10-1 to avoid its contractual obligations.  Georgia courts "have declined to enforce the provisions of O.C.G.A. § 36-10-1 as not timely asserted."  *Howard*, 260 Ga. App. at 332; *see also Twiggs*, 245 Ga. App. at 232 (party that waited two years barred from arguing the contract was illegal).  Moreover, any alleged non-compliance with O.C.G.A. § 36-10-1 can be cured.  "If

At a minimum, the question of whether Union Carbide has been unjustly enriched by its retention of the option payments cannot be resolved on a motion to dismiss, without the benefit of discovery and development of a factual record. Notwithstanding Union Carbide's insistence in its briefs and at the hearing that it is entitled to compensation for keeping the property off the market for seven years, there is nothing in the record to support Union Carbide's contentions. To the contrary, the Complaint alleges that Union Carbide is seeking to avoid the Option Agreement because it has identified a more lucrative use of the property. (Compl. at 3, ¶ 49.) Accepting the allegations of the Complaint as true at this pleadings stage, Camden County has stated a claim for unjust enrichment if Union Carbide has benefited from holding the property for seven years and is further allowed to retain the option payments.

Respectfully submitted this 24th day of January, 2023.

*/s/ Jeremy U. Littlefield*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Jeremy U. Littlefield

---

otherwise valid, [the contract] becomes enforceable when subsequently recorded." *Malcom v. Fulton County*, 209 Ga. 392, 399 (1952). This is because "[t]he statute fixes no time during which a county contract may be entered of record." *Id*.

Georgia Bar No. 141539
jlittlefield@robbinsfirm.com
(*Admitted Pro Hac Vice*)
Robbins Alloy Belinfante Littlefield LLC
500 14th St NW
Atlanta, Georgia 30318
Telephone: (678) 701-9381

John S. Myers
Georgia Bar No. 533150
John S. Myers, P.C.
P.O. Box 99
200 East Fourth Street
Woodbine, Georgia 31569
Phone (912) 510-8400
countyattorney@co.camden.ga.us

*Attorneys for Camden County*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have served the foregoing **PLAINTIFF'S POST-HEARING BRIEF** on all parties by electronically filing it with the Clerk of the Court using the Court's electronic filing system.

This 24th day of January 2023.


/s/ Richard L. Robbins
Richard L. Robbins