## IN THE SUPERIOR COURT OF CAMDEN COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners, | ) ) ) ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) ) | NO. _____ |
| v. | ) ) | |
| UNION CARBIDE CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff Camden County, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners ("Camden County" or "Plaintiff") brings this Complaint against Union Carbide Corporation ("Union Carbide" or "Defendant") (Plaintiff and Defendant are collectively referred to herein as the "Parties") as follows:

## INTRODUCTION

In July 2015, Camden County began the process of establishing a rocket launch facility within its borders for commercial space exploration (the "Spaceport Project"). The development process required a lengthy review by the Federal Aviation Administration ("FAA") and the expenditure of significant time, money, and resources. In fact, from 2015 to present, Camden County has spent more than $10.3 million, or 3% of the County's total budget, toward the development of the Spaceport Project.

A significant portion of Camden County's expenditures related to the purchase of property that would house the facility and launch site. To this end, Camden County entered into a contract, as authorized by a series of resolutions approved by the Camden County Board of

Commissioners, to purchase a large tract of land from Union Carbide (the "Property"). Due to the long and complex nature of the FAA review process, Camden County did not purchase the Property from Union Carbide outright in 2015. Instead, the Parties entered into an option contract whereby Camden County would hold an exclusive right to purchase the Property for a set period of time. It is from this transaction that this lawsuit arises.

On December 20, 2021, the FAA issued the final approval necessary for the Spaceport Project to move forward on the Property and a Commercial Space Transportation License was issued to Camden County. On December 21, 2021, however, before Camden County could exercise its rights to purchase the Property, a small group of citizens obtained a temporary restraining order preventing Camden County's purchase of the Property while they sought a referendum to overturn the resolutions that authorized the option contract in the first place. Although the restraining order was dissolved a month later on January 20, 2022, the plaintiffs were successful in persuading the Camden County Probate Court to authorize the referendum. Camden County filed suit in the Superior Court of Camden County to stop the referendum, but the request was denied. The referendum, which had low turnout, ultimately passed with the support of less than 15% of registered voters in the County. Camden County appealed the legality of the referendum, which was transferred to the Georgia Supreme Court and remains pending. Oral argument is currently scheduled in that case for August 23, 2022.

Meanwhile, even prior to the referendum, Union Carbide stonewalled and sought to avoid its contractual obligations. Rather than engage with Camden County to work towards completing required items under the option contract, Union Carbide was non-responsive or worked against Camden County's efforts to perform the contract terms. By way of example, when Camden County advised Union Carbide of its intent to assign its option rights to the newly-created

Camden County Spaceport Authority (a move that was long contemplated by the Parties, was authorized by the contract, and would have provided additional safeguards to protect the Parties' rights while the referendum litigation was pending), Union Carbide rejected Camden County's request without any reasonable justification.

After the referendum, Union Carbide's conduct only further confirmed its bad faith efforts to avoid the terms of the option contract. Although Union Carbide did not previously raise any concerns regarding the legality of the option contract, Union Carbide changed course by using the referendum as a pretext to avoid its contractual obligations. Rather than work in good faith with Camden County to preserve the Parties' respective rights pending resolution of the appeal on the legality of the referendum—which could have been accomplished with a simple extension of the option period as the Parties had done before—Union Carbide instead sought to extinguish Camden County's option rights, for which Camden County had paid Union Carbide approximately $2.6 million to date.

Union Carbide's real reason for repudiating the contract had nothing to do with the referendum but was instead about money: Union Carbide's intent is to reap more money from the Property through lucrative "conservation easement tax credits," combined with potentially selling the Property for more money. The referendum is an after-the-fact pretext for Union Carbide, asserted months after the company began efforts to stonewall on the contract.

Given Union Carbide's lack of cooperation, Camden County had no choice but to exercise its right to purchase the Property on April 12, 2022 and trigger the 90-day clock in which the Parties would have to close on the Property. In a continuation of its bad-faith tactics, Union Carbide made no effort to proceed toward closing and again refused to perform any of its pre-closing obligations. When Camden County proposed an extension of the closing date, which

would have addressed Union Carbide's purported concerns regarding expense, Union Carbide again refused and repudiated the contract, notwithstanding the pendency of the appeal. Apparently, Union Carbide believes it is entitled to retain the payments made by Camden County under the option contract while simultaneously claiming that the contract is invalid, a position that lacks any legal, contractual, or equitable basis.

The deadline for closing to occur under the option contract was July 11, 2022. Union Carbide failed to do so, despite receiving notice of default from Camden County and opportunity to cure. Camden County, on the other hand, was at all times, and remains, ready, willing, and able to purchase the Property and perform its obligations under the Parties' agreement. Accordingly, Camden County now brings this action seeking specific performance to force Union Carbide to comply with its obligations thereunder and proceed toward closing as soon as practically possible. Alternatively, and at the very least, Camden County is entitled to a refund of the monies it has already paid to Union Carbide plus attorneys' fees and expenses.

## **PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiff Camden County is a political subdivision of the State of Georgia, acting by and through its Board of Commissioners. The Board is presently comprised of Lannie Brant; Chuck Clark; Trevor Readdick; Gary Blount; and Ben Casey, all of whom reside in Camden County.

2.

Defendant Union Carbide Corporation is a New York Corporation with its principal place of business at 7501 State Highway 185 North, Seadrift, TX, 77983, USA. It may be served through its local registered agent, C T Corporation System, at 289 S. Culver St, Lawrenceville, GA, 30046-4805.

3.

Jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND

### I.    History of The Parties' Agreement and Payments by Camden County.

4.

On or about July 13, 2015, Camden County entered into an option contract (hereinafter, the "Initial Agreement") with Union Carbide to allow for the purchase of the Property, a specific tract of land located within Camden County. A true and correct copy of the Initial Agreement is attached hereto as **Exhibit A**.[1]

5.

The Property consists of a subdivided portion of approximately 4011 acres in Camden County (the "Site"), as shown in the drawing, map, or survey plat in Exhibit A-1 to **Exhibit A** and as more specifically described by metes and bounds in Exhibit A-2 to **Exhibit A**.

6.

Pursuant to the terms of the Initial Agreement, Camden County paid to Union Carbide the sum of nine-hundred and sixty thousand dollars ($960,000.00) for the exclusive right, to be held for a period of two (2) years, to purchase the Property for the agreed upon price of four-million and eight-hundred thousand dollars ($4,800,000) (the "Option"). **Exhibit A** at 4-6, Sections (2)(A); (2)(B); and (3)(A).

---

[1] This Complaint and its exhibits are being filed publicly in redacted form to preserve the confidentiality of certain information, including financial information, regarding a real estate transaction entered into by the County. Such information is exempt from public disclosure where, as here, the transaction remains pending. *See* O.C.G.A. § 50-18-72(a)(9). The Agreement also contains a confidentiality provision entered into between the Parties. Camden County is filing a motion to seal the Complaint simultaneously herewith and shall provide an unredacted copy of the Complaint and the exhibits to the Court for *in camera* review.

7.

Effective as of July 27, 2017, the Parties executed the first of four amendments to the Initial Agreement (the "First Amendment"). Pursuant to the First Amendment, the period in which Camden County held the exclusive right to exercise its Option to purchase the Property was extended an additional two (2) years (i.e., through July 13, 2019) in exchange for payment of an additional nine-hundred and sixty thousand dollars ($960,000.00). A true and correct copy of the First Amendment is attached hereto as **Exhibit B**.

8.

Effective as of July 13, 2019, the Parties executed the second of four amendments to the Initial Agreement (the "Second Amendment"). Pursuant to the Second Amendment, the period in which Camden County held the exclusive right to exercise its Option to purchase the Property was extended an additional eighteen (18) months (i.e., through January 13, 2021) in exchange for payment of an additional seven-hundred and twenty thousand dollars ($720,000.00). A true and correct copy of the Second Amendment is attached hereto as **Exhibit C**.

9.

Effective as of January 13, 2021, the Parties executed the third of four amendments to the Initial Agreement (the "Third Amendment"). Pursuant to the Third Amendment, the period in which Camden County held the exclusive right to exercise its Option to purchase the Property was extended an additional twelve (12) months (i.e., through January 13, 2022). A true and correct copy of the Third Amendment is attached hereto as **Exhibit D**.

10.

Effective as of January 13, 2022, the Parties executed the fourth of four amendments to the Initial Agreement (the "Fourth Amendment"). Pursuant to the Fourth Amendment, the period

in which Camden County held the exclusive right to exercise its Option to purchase the Property was extended an additional three (3) months (i.e., through April 13, 2022). A true and correct copy of the Fourth Amendment is attached hereto as **Exhibit E**.

11.

The Initial Agreement, together with the First, Second, Third, and Fourth Amendments, are referred to collectively herein as the "Agreement." The time period in which Camden County could exercise its Option under the Agreement, from July 13, 2015 through April 13, 2022, is hereinafter referred to as the "Option Period."

12.

In sum, pursuant to the Parties' execution and extensions of the Agreement, Camden County paid option payments to Union Carbide in the total amount of two million and six-hundred and forty thousand dollars ($2,640,000.00). *See* **Exhibit A** at 5; **Exhibit B** at 1; and **Exhibit C** at 2.

13.

The Agreement provides that portions of the option payments paid by Camden County are to be credited against the final purchase price of the Property. Specifically, as of the date of this Complaint, Camden County is entitled to a credit in the amount of two-million and one-hundred and fifteen thousand dollars ($2,115,000.00) toward the total four-million and eight-hundred thousand dollars ($4,800,000.00) purchase price of the Property (the "Option Credit"). *See* **Exhibit E** at 1-2.

II.     **Operative Terms of the Agreement.**

14.

Section (2)(E) of the Agreement provides "[t]he Option may be exercised by [Camden County] at any time prior to expiration of the Option Period by [Camden County] giving written notice to [Union Carbide] of [Camden County's] commitment to purchase the Property upon the terms and conditions set forth in this Agreement. The parties shall **proceed diligently in a cooperative manner and in good faith to close on the transaction within not more than 90 days from and after such notice is received** by [Union Carbide], or such other date as the parties may mutually agree in writing (the "Closing")." **Exhibit A** at 6 (emphasis added).

15.

In addition to this general requirement to proceed toward Closing, the Agreement further provides for specific pre-Closing tasks to be completed by Union Carbide.

16.

As stated in Section (5)(iv)(a) of the Agreement, for example, Union Carbide was required to "make reasonable commercial efforts to obtain a subdivision of the Site" to exclude a hazardous waste landfill and groundwater treatment system from the Site. **Exhibit A** at 14.

17.

As stated in Section (5)(iv)(b) of the Agreement, Union Carbide was further required to make reasonable commercial efforts to obtain a revision of the existing environmental covenant on the Property, recorded in Camden County property records at Book 1562, Page 00627 (the "Environmental Covenant") to authorize use of groundwater from the Site. **Exhibit A** at 14.

18.

Pursuant to Section 11 of the Agreement, in the event of a default or wrongful failure to

Close by Union Carbide, which remains uncured for a period of thirty (30) days after

written notice thereof is given to Union Carbide, Camden County is entitled, at its election, to

either (a) a return of the option payments it made to Union Carbide as liquidated damages, or

(b) bring an action for specific performance of the Agreement. *See* **Exhibit A** at 17.

19.

Pursuant to Section 2(D) of the Agreement, Camden County is further entitled to a refund

of the option payments it made to Union Carbide if Union Carbide fails to either substantially

resolve the concerns raised in a 2015 review letter from the Georgia Department of Natural

Resources (the "Technical Review Letter") and/or subdivide the Site as outlined in paragraph 16

above. **Exhibit A** at 5.

### III.    The March 8, 2022 Referendum.

20.

In December 2021, the Spaceport Project was about to enter the next stage of its

development. The FAA's final approval of the EIS came in its Record of Decision, issued

December 20, 2021, and a Commercial Space Transportation License was issued to Camden

County that same day.[2]

21.

By this time, Camden County had invested over $10 million toward the Spaceport

Project, roughly 25% of which was in the form of the option payments paid to Union Carbide.

---

[2] A record of FAA's approval may be found at: FAA, Record of Decision for Spaceport Camden Final Environmental Impact Statement, https://www.faa.gov/sites/faa.gov/files/2022-04/Spaceport_Camden_ROD_Final.pdf (last visited July 27, 2022).

22.

Only a week prior, however, on or about December 14, 2021, two residents of Camden County filed a petition in the Camden County Probate Court seeking a referendum election pursuant to Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution that would repeal the resolutions passed by Camden County authorizing its execution of the Agreement. *In Re: Petition Pursuant to Georgia Constitution Article IX, Section II, Paragraph I (B) (2) For Special Election Concerning Camden County's Purchase of Union Carbide Property*, Probate Court of Camden County, Case No. 2021P271.

23.

The Probate Court sanctioned the petition and called for a special election to be held on March 8, 2022 (the "Referendum") on the following question:

> "Shall the resolutions of the Board of Commissioners of Camden County, Georgia authorizing the Option Contract with Union Carbide Corporation and Camden County's right and option to purchase the property described therein be repealed."

24.

In response, Camden County filed a petition for a writ of prohibition and other relief in the Superior Court of Camden County, alleging that the Probate Court exceeded its jurisdiction on the basis that Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution does not authorize a referendum election to repeal the resolutions of the County's Board of Commissioners. *Goodman, et al. v. Camden County*, Superior Court of Camden County, Civil Action File No. CV-2021-1121.

25.

On March 4, 2022, the Superior Court denied Camden County's petition and allowed the Referendum to go forward. On March 8, 2022, Camden County appealed the Superior Court's

decision and sought an emergency stay of the certification process. The Georgia Court of Appeals, in turn, transferred the appeal to the Georgia Supreme Court, finding that "the primary underlying issue [of whether] the County's challenge to the validity of the underlying referendum election pursuant to Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution" is a constitutional issue of first impression. *See Camden County v. Sweatt, Judge et al.*, Case No. S22A0837 (the "Appeal").

26.

Also on March 8, 2022, the Referendum was passed by a vote of 4,169 in favor to 1,613 opposed with less than 17% of registered voters participating.[3]

27.

On March 10, 2022, the Supreme Court of Georgia denied Camden County's emergency motion and the results of the Referendum were subsequently certified by the Probate Court.

28.

The Appeal remains pending and is currently scheduled for oral argument before the Georgia Supreme Court on August 23, 2022.

### IV.    Union Carbide Stonewalls, County Exercises its Right to Purchase the Property, and Union Carbide Repudiates the Agreement.

29.

Well before executing the Fourth Amendment, Union Carbide began stonewalling Camden County's efforts to move the Spaceport Project forward. These efforts intensified after execution of the Fourth Amendment.

---

[3] Official summary results of the votes cast in the Referendum are available here: https://www.co.camden.ga.us/DocumentCenter/View/13144/03-08-2022--Election-Summary-Report-Official-and-Complete (last visited on July 27, 2022).

30.

For example, on February 23, 2022, counsel for Camden County reached out to Union Carbide and proposed that the Parties execute an agreement assigning the County's Option to purchase the Property to the Camden County Spaceport Authority.

31.

Assignment to the Spaceport Authority had long been contemplated by the Parties and would have allowed the Parties to work in good faith toward Closing while the Appeal was pending.

32.

Pursuant to Section 9 of the Agreement, consent to such assignment was not to be "unreasonably withheld, conditioned or delayed by [Union Carbide]." **Exhibit A** at 17. Union Carbide, however, refused the extension without providing any reasonable justification for doing so.

33.

In addition to unreasonably and inexplicably rejecting assignment of the Agreement, Union Carbide also began to curtail its communications with Camden County. Union Carbide would ignore or delay for weeks before responding to basic inquiries from Camden County or attempts to coordinate the Parties' respective efforts to ensure Closing could proceed as planned.

34.

Union Carbide refused or ignored multiple requests by Camden County for documents it was obligated to provide under the Agreement. When it did respond, Union Carbide would give limited or incomplete answers without explanation or attempt to further engage Camden County.

35.

After the Referendum passed, Union Carbide made no attempt to contact Camden County to figure out how to move forward or preserve the Parties' rights (or to offer to return Camden County's money).

36.

Given the circumstances (and the now pending Appeal), Camden County would have preferred to work collaboratively with Union Carbide to carry out the purpose of the Agreement.

37.

To this end, Camden County again reached out to Union Carbide and proposed that the Parties enter into a fifth amendment of the Agreement to extend the Option Period until after the Supreme Court's ruling on the Appeal.

38.

The Parties had previously entered into multiple amendments extending the Option Period and a further extension would have caused no harm to Union Carbide, avoided this litigation, and simply preserved the status quo while allowing the underlying matter of the Referendum's propriety to be resolved by the Georgia Supreme Court.

39.

 Union Carbide refused, saying it suddenly had no authority to do so, and offered no other solution on how the Parties might work together to effectuate the purpose of their Agreement. Clearly, Union Carbide was happy to use the Referendum as cover to back out of the Agreement and take Camden County's money with it.

40.

Accordingly, Camden County had no choice but to exercise its Option to purchase the Property to preserve its rights and its substantial investment in the Spaceport Project.

41.

On April 12, 2022, while the Appeal was pending and within the Option Period as set by the Fourth Amendment, Camden County sent a letter to Union Carbide exercising its right under Agreement Section (2)(E) to purchase the Property. A true and correct copy of Camden County's April 12, 2022 letter is attached hereto as **Exhibit F**. The decision to exercise the Option and purchase the Property was made by unanimous consent of the Camden County Board of Commissioners. *Id.*

42.

By separate email, Camden County's counsel also provided a detailed outline of various items and tasks that would need to be completed by the Parties prior to and after Closing. These items included, but were not limited to, tasks necessary for Union Carbide to subdivide the Property as outlined in the Agreement and other operational and compliance measures that would need to be diligently completed for Closing to occur within the 90-day window.

43.

Because Camden County exercised its option on April 12, 2022, the deadline for Closing to occur was July 11, 2022. *See* **Exhibit A** at 6.

44.

Union Carbide, however, failed to undertake any of the measures or complete any of the tasks outlined in Camden County's email or otherwise put forth any efforts to proceed toward Closing on or before July 11, 2022.

45.

Rather, on May 16, 2022, Union Carbide responded to Camden County's letter and, in a direct breach of the Agreement, disavowed the existence of any obligations to close or conduct any pre-Closing measures, claiming that the Referendum's passage "repudiated the [ ] Agreement" and thus "there is no longer an Option for the County to exercise." A true and correct copy of Union Carbide's May 16, 2022 letter is attached hereto as **Exhibit G**.

46.

In a letter dated June 8, 2022, counsel for Camden County responded and reiterated its position that Camden County's execution of the Agreement, as well as its subsequent exercise of the option to purchase the Property, was valid and legal under Georgia law as no referendum was necessary to consummate the purchase of the Property in the first place. A true and correct copy of Camden County's June 8, 2022 letter is attached hereto as **Exhibit H**.

47.

Camden County's June 8, 2022 letter also put Union Carbide on notice that its May 16, 2022 letter represented a default under Section (11)(B) of the Agreement, and allowed Union Carbide thirty (30) days to cure.

48.

On July 7, 2022, Union Carbide sent a final letter to Camden County stating its position that its May 16, 2022 letter did not constitute a default based on its theory that, again, the Referendum constituted a repudiation of the Agreement and thereby relieved Union Carbide of

its obligations thereunder.[4] A true and correct copy of Union Carbide's July 7, 2022 letter is attached hereto as **Exhibit I**.

49.

Union Carbide's July 7, 2022 letter further claimed that it now "wants to dedicate the Property for conservation purposes." This was disingenuous. Indeed, Union Carbide has continually failed to remediate the Property's heavily polluted areas as required by the Agreement. What Union Carbide instead wants to achieve is more conservation easement tax credits—to monetize the value of the Property more than the contract price at the expense of the taxpayers.

50.

Regardless, Union Carbide failed to Close on the Property on or before July 11, 2022 and, as of the date of this Complaint, has failed to make any further effort to proceed toward Closing on the Property.

## **COUNT I – BREACH OF CONTRACT (SPECIFIC PERFORMANCE)**

51.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

---

[4] Union Carbide also seems to imply in its July 7, 2022 letter that Camden County has committed some unspecified procedural error by appealing the Superior Court's denial of the writ of prohibition rather than the Probate Court's certification of the Referendum election results. *See* **Exhibit I** at 2. This is a nonsensical position for several reasons, not the least of which is that Camden County was not a party to the Probate Court's certification proceeding. Indeed, the Probate Court denied Camden County's attempt to participate in that process when it held there was no legal authority authorizing Camden County's caveat to challenge a petition filed pursuant to the constitutional procedure.

52.

The Agreement is a binding contract supported by proper consideration.

53.

Camden County has at all times stood ready, and remains, willing and able to comply
with its obligations under the Agreement.

54.

By its April 12, 2022 letter, Camden County exercised its Option to purchase the
Property under Section (2)(E) of the Agreement.

55.

As a result of this exercise, Union Carbide was required to "proceed diligently and in a
cooperative manner in good faith" to Close on the Property, including completing its outstanding
pre-Closing obligations, within 90 days, or by July 11, 2022.

56.

Union Carbide failed to do so. Based on the allegations above, Union Carbide breached
and materially defaulted under the Agreement by, *inter alia*, failing to make reasonable
commercial efforts to obtain a subdivision of the Property as required by Section (5)(iv)(a) of the
Agreement; failing to make reasonable commercial efforts to obtain a revision of the existing
Environmental Covenant; and otherwise failing to make any efforts to diligently and
cooperatively proceed toward Closing, and ultimately failing to Close, on or before July 11, 2022
as required by Section (2)(E) of the Agreement.

57.

In accordance with Section 11(B) of the Agreement, such breaches and material defaults
by Union Carbide, independently and collectively, entitle Camden County, at its election, to

-17-

either (a) a return of the option payments it made to Union Carbide as liquidated damages, or (b) bring an action for specific performance of the Agreement. *See* **Exhibit A** at 17.

58.

Camden County hereby elects and chooses option "b," and demands specific performance of the Agreement. Accordingly, Union Carbide must conduct all those necessary pre- and post-Closing obligations required under the Agreement and more broadly must "proceed diligently in a cooperative manner and in good faith" to facilitate Closing and Camden County's purchase of the Property. *See* **Exhibit A** at 6.

59.

Specific performance is further warranted here as Camden County lacks an adequate remedy at law.

60.

The Agreement relates to the purchase of specific real property, a unique asset. Indeed, the Spaceport Project relies on Camden County's purchase of the Property, which has gone through the extensive, and expensive, review process by the FAA and received final approval to be used as a commercial spaceport.

61.

Camden County has no way to recoup in damages under the Agreement its total investment in the Spaceport Project that Union Carbide's breach of the Agreement has put in jeopardy.

62.

Accordingly, damages alone would be insufficient to compensate Camden County for Union Carbide's nonperformance and specific performance of the Agreement is warranted. *See* O.C.G.A. § 23-2-130.

## <u>COUNT II – BREACH OF CONTRACT (DAMAGES)</u><br><u>(IN THE ALTERNATIVE)</u>

63.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

64.

The Agreement is a binding contract supported by proper consideration.

65.

Camden County has at all times stood ready, and remains, willing and able to comply with its obligations under the Agreement.

66.

By its April 12, 2022 letter, Camden County exercised its Option to purchase the Property under Section (2)(E) of the Agreement.

67.

As a result of this exercise, Union Carbide was required to "proceed diligently and in a cooperative manner in good faith" to Close on the Property, including completing its outstanding pre-Closing obligations, within 90 days, or by July 11, 2022.

68.

Union Carbide failed to do so. Based on the allegations above, Union Carbide breached and materially defaulted under the Agreement by, *inter alia*, failing to make reasonable

commercial efforts to obtain a subdivision of the Property as required by Section (5)(iv)(a) of the Agreement; failing to make reasonable commercial efforts to obtain a revision of the existing Environmental Covenant; and further failing to make any efforts to diligently and cooperatively proceed toward Closing, and ultimately failing to Close, on or before July 11, 2022 as required by Section (2)(E) of the Agreement.

69.

In accordance with Section 11(B) of the Agreement, such breaches and material defaults by Union Carbide, independently and collectively, entitle Camden County, at its election, to either (a) a return of the option payments it made to Union Carbide as liquidated damages, or (b) bring an action for specific performance of the Agreement. *See* **Exhibit A** at 17.

70.

In the alternative to the specific performance relief as requested in Count I above, if for whatever reason such is unavailable to Camden County, Camden County hereby elects and chooses option "a," and demands a return of the entirety of the option payments paid to Union Carbide, in the amount of **$2,640,000.00**.

71.

Camden County is further entitled to a full refund of its option payments, totaling **$2,640,000.00**, due to Union Carbide's failure to subdivide the Retained Land, as well as its failure to substantially resolve the concerns raised in the Technical Review Letter, under Section (2)(D)(ii) of the Agreement. *See* **Exhibit A** at 5.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING
## (IN THE ALTERNATIVE)

72.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

73.

Every contract includes an implied covenant of good faith and fair dealing.

74.

The purchase of the Property is the fundamental purpose of the Agreement, for which Camden County paid Union Carbide **$2,640,000.00** to date. Union Carbide's refusal to extend the Option Period or extend the closing date while the Appeal is pending—and unilateral declaration that the Agreement is a nullity under which Camden County had zero ability to exercise its Option—is a breach of the covenant of good faith and fair dealing implied in the Agreement that defeats its fundamental purpose.

75.

Union Carbide's refusal to cooperate with Camden County and/or take any steps to facilitate its purchase of the Property prior to Camden County's exercise of its Option, including its refusal to agree to the assignment of the Agreement to the Spaceport Authority prior to the Referendum, was also a breach of the covenant of good faith and fair dealing implied in the Agreement.

76.

Union Carbide's continued refusal to cooperate with Camden County and/or take any steps to facilitate its purchase of the Property after Camden County exercised its Option,

including its refusal to undertake any pre-Closing efforts; its attempt to use the Referendum as a means to abscond with the option payments paid to it by Camden County; and its deprivation of Camden County of the benefit of the Option Credit toward the final purchase price of the Property, were further breaches of the covenant of good faith and fair dealing implied in the Agreement.

77.

As a direct and proximate cause of Union Carbide's breaches of the implied covenant of good faith and fair dealing, Camden County has been damaged in an amount to be determined at trial, but in any event not less than the value of the option payments it has paid to Union Carbide under the Agreement, **$2,640,000.00**. In the alternative to the specific performance relief as requested in Count I above, if for whatever reason such is unavailable to Camden County, Camden County is entitled to damages in at least this amount.

<strong><u>COUNT IV – UNJUST ENRICHMENT</u></strong>

78.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

79.

Union Carbide has unjustly enriched itself at Camden County's expense, as set forth above, in that it has received the benefit of Camden County's performance under the Agreement and including, specifically, Camden County's option payments in exchange for, in part, an Option Credit in the amount of $2,115,000.00 to ostensibly be applied toward its total purchase price of the Property.

-22-

80.

Union Carbide requested and knowingly accepted the Camden County's performance under the Agreement, including its option payments in exchange for the Option Credit, but has now failed and/or refused to confer the benefit of such performance.

81.

In performing under the Agreement and making its option payments, Camden County reasonably expected to be compensated therefor in the form of the Option Credit. It would be inequitable and unjust for Union Carbide to retain the substantial benefits realized through Camden County's performance under the Agreement, including its receipt of Camden County's option payments, without compensating Camden County for the same.

82.

Accordingly, Union Carbide has been unjustly enriched by the full amount of the total value of the option payments, **$2,640,000.00,** or at least the amount of the Option Credit, **$2,115,000.00**. In the alternative to the specific performance relief as requested in Count I above, if for whatever reason such is unavailable to Camden County, Camden County is entitled to damages in at least such amounts.

## COUNT V – ATTORNEYS' FEES

83.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

84.

Pursuant to O.C.G.A. § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made

prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

85.

Union Carbide has acted in bad faith and has caused Camden County unnecessary trouble and expense.

86.

As a result of the foregoing misconduct, Camden County is entitled to recover its attorneys' fees and expenses in the litigation pursuant to O.C.G.A. § 13-6-11 and otherwise under Georgia law.

### PRAYER FOR RELIEF

WHEREFORE, Camden County demands the following relief and judgment against Union Carbide as follows:

(a)   That Camden County be awarded injunctive relief in the form of specific performance of the Agreement by Union Carbide as set forth in Count I;

(b)   Alternatively, that Camden County be awarded compensatory damages against Union Carbide in an amount to be determined at trial, but in no event less than **$2,640,000.00** as set forth in Counts I and IV above;

(c)   That Camden County be awarded all its attorneys' fees and expenses of litigation against Union Carbide;

(d)   That Camden County be awarded prejudgment interest against Union Carbide, at the maximum rate allowable by law; and

(e)   That Camden County be awarded any other relief that the Court deems just and proper.

This 27th day of July, 2022.

/s/ Richard L. Robbins
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Jeremy U. Littlefield
Georgia Bar No. 141539
jlittlefield@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

John S. Myers
Georgia Bar No. 533150
John S. Myers, P.C.
P.O. Box 99
200 East Fourth Street
Woodbine, Georgia 31569
Phone (912) 510-8400
countyattorney@co.camden.ga.us

*Attorneys for Camden County*