# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners,

    Plaintiff,

v.

UNION CARBIDE CORPORATION,

    Defendant.

CIVIL ACTION FILE NO.

2:22-CV-00077-LGW-BWC

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

Plaintiff Camden County, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners ("Camden County" or "Plaintiff") hereby files this First Amended Complaint against Union Carbide Corporation ("Union Carbide" or "Defendant") to recover **Two Million Six Hundred Forty Thousand Dollars ($2,640,000)** of taxpayer dollars that—as a result of the March 8, 2022, referendum by the electorate of Camden County—were paid to Union Carbide without authorization pursuant to a void contract. Union Carbide is not entitled to retain public funds wrongfully paid and for which Union Carbide has conferred no benefit to Camden County.

# INTRODUCTION

In July 2015, Camden County's Board of Commissioners adopted a resolution to begin the process of establishing a rocket launch facility for commercial space exploration (the "Spaceport Project"). In connection with this effort, Camden County paid over $2.6 million in taxpayer dollars toward the purchase of a large tract of land from Union Carbide on which the Spaceport Project was to be located (the "Property").

Camden County did not purchase the Property from Union Carbide outright because the Spaceport Project was under review for several years by the Federal Aviation Administration ("FAA"). Instead, the Board of Commissioners passed resolutions that authorized an Option Contract with Union Carbide, pursuant to which Camden County paid an option price and additional payments that would ultimately be credited against the total purchase price of the Property, if and when Camden County exercised the purchase option.

On December 20, 2021, the FAA issued the final approval necessary for the Spaceport Project to move forward and a Commercial Space Transportation License was issued to Camden County. On December 21, 2021, however, before Camden County could exercise its option right to purchase the Property, a group of citizens began an effort to stop the Spaceport Project by repealing the resolutions that authorized the Option Contract in the first place.

This effort culminated with the Camden County Probate Court allowing a voter referendum to repeal the resolutions adopted by the Board of Commissioners that authorized the Option Contract and subsequent amendments. While Camden County opposed the referendum and filed lawsuits in the Superior Court of Camden County to stop it, the referendum went forward in a special election and was passed by a majority of voters on March 8, 2022. As a result of the referendum, the resolutions passed by the Board of Commissioners that authorized the Option Contract (and the payments made by Camden County to Union Carbide) were "repealed."

Camden County appealed the legality of the referendum to the Georgia Supreme Court. While that appeal was pending, Camden County filed this lawsuit against Union Carbide out of an abundance of caution and to preserve its rights and the interests of taxpayers. In the original complaint, Camden County sought, in the alternative, either (1) specific performance by Union Carbide to sell the Property, in the event the referendum was overturned by the Georgia Supreme Court; or (2) a full or at least partial return of the monies it had paid to Union Carbide, if the referendum was upheld.

The latter has now come to pass. On February 9, 2023, the Georgia Supreme Court upheld the referendum's legality and the resolutions authorizing the Option Contract now stand repealed. As such, the Option Contract is void, and Union

Carbide has no right to retain any of the public monies it received without authorization. Union Carbide's retention of these funds—in whole or in part—further constitutes unjust enrichment, as Camden County has not, and will not, receive any benefit for the payments made to Union Carbide pursuant to the void contract.

Accordingly, and as stated more fully herein, Camden County is entitled to recover **$2,640,000** in public funds wrongfully paid to Union Carbide without authorization and for which Union Carbide has conferred no public benefit.

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Camden County is a political subdivision of the State of Georgia, acting by and through its Board of Commissioners. The Board is presently comprised of Lannie Brant; Martin Turner; Trevor Readdick; Jim Goodman; and Ben Casey, all of whom reside in Camden County.

2.

Defendant Union Carbide Corporation is a New York Corporation with its principal place of business at 7501 State Highway 185 North, Seadrift, TX, 77983, USA. It may be served through its local registered agent, C T Corporation System, at 289 S. Culver St, Lawrenceville, GA, 30046-4805.

3.

Jurisdiction and venue are proper in this Court. This action was originally filed in the Superior Court of Camden County, which Union Carbide subsequently removed to this Court.

**FACTUAL BACKGROUND**

**I.     The Camden County Resolutions and Payments to Union Carbide**

4.

On June 3, 2015, the Camden County Board of Commissioners approved a resolution authorizing Camden County to enter into an option agreement with Union Carbide Corporation for the purchase of the Property (the "Initial Resolution").

5.

As authorized by the Initial Resolution, the Parties subsequently executed the contemplated contract (the "Option Contract") pursuant to which Camden County paid to Union Carbide the sum of $960,000 for the exclusive right—for an initial option period of two years—to purchase the Property for the total agreed upon price of $4,800,000.

6.

In the years following the Initial Resolution, the Board of Commissioners adopted an additional four resolutions (with the Initial Resolution, the

"Resolutions") that authorized amendments by which the option period for Camden County to purchase the Property was extended through April 23, 2022.

7.

In total, Camden County paid to Union Carbide the amount of two million six hundred forty thousand dollars ($2,640,000) pursuant to the terms of the Option Contract and subsequent amendments, as authorized by the Resolutions.

8.

In addition to receiving option rights to purchase the Property, the Option Contract entitled Camden County to a credit towards the purchase price of the Property in the amount of $2,115,000.

9.

As part of the overall consideration, the Option Contract also included several conditions that Union Carbide was required to meet prior to the closing of the purchase of the Property, which were intended to benefit Camden County. For example, Union Carbide was required to make reasonable commercial efforts to (i) subdivide the site to exclude a hazardous waste landfill and groundwater treatment system; (ii) obtain a revision of the existing environmental covenant to authorize use of groundwater from the site; and (iii) substantially resolve the concerns raised in a 2015 review letter from the Georgia Department of Natural Resources.

## II. The March 8, 2022 Referendum.

10.

In December 2021, the Spaceport Project was about to enter the next stage of its development. The FAA's final approval of the EIS came in its Record of Decision, issued December 20, 2021, and a Commercial Space Transportation License was issued to Camden County that same day.

11.

Only a week prior, however, on or about December 14, 2021, two residents of Camden County filed a petition in the Camden County Probate Court seeking a referendum election pursuant to Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution that would repeal the Resolutions passed by Camden County that authorized the Option Contract. <u>In Re: Petition Pursuant to Georgia Constitution Article IX, Section II, Paragraph I (B) (2) For Special Election Concerning Camden County's Purchase of Union Carbide Property,</u> Probate Court of Camden County, Case No. 2021P271.

12.

The Probate Court sanctioned the petition and called for a special election to be held on March 8, 2022 (the "Referendum") on the following question:

> "Shall the resolutions of the Board of Commissioners of Camden County, Georgia authorizing the Option Contract with Union Carbide Corporation and Camden County's right and option to purchase the property described therein be repealed."

By its express terms, the Referendum—if approved by the Camden County electorate—would "repeal" the underlying Resolutions that authorized the Option Contract in the first instance, thereby rendering it void *ab initio*.

13.

In response, Camden County filed a petition for a writ of prohibition and other relief in the Superior Court of Camden County, alleging that the Probate Court exceeded its jurisdiction on the basis that Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution (the "Home Rule Paragraph") does not authorize a referendum election to repeal the Resolutions passed by the Board of Commissioners. Camden County v. Sweatt, Superior Court of Camden County, Civil Action File No. SUCV2022000161.

14.

On March 4, 2022, the Superior Court denied Camden County's petition and allowed the Referendum to go forward.

15.

On March 8, 2022, the Referendum passed by a vote of 4,169 in favor to 1,613 opposed with less than 17% of registered voters participating.

16.

That same day, Camden County appealed the Superior Court's decision and sought an emergency stay of the certification process. The Georgia Court of

Appeals, in turn, transferred the appeal to the Georgia Supreme Court, finding that "the primary underlying issue [of whether] the County's challenge to the validity of the underlying referendum election pursuant to Art. IX, Sec. II, Par. I (b) (2) of the Georgia Constitution" is a constitutional issue of first impression. See Camden County v. Sweatt, Judge et al., Case No. S22A0837 (the "Appeal").

17.

On March 10, 2022, the Georgia Supreme Court denied Camden County's emergency motion and the results of the Referendum were subsequently certified by the Probate Court.

**III.     Camden County Commences Legal Action Against Union Carbide**

18.

After the Referendum passed, Camden County sought Union Carbide's cooperation to ensure that its contractual rights and taxpayer money were protected while the Referendum's legality was addressed by the Georgia Supreme Court.

19.

Through multiple correspondence, as set forth more fully in the original Complaint (see Doc. [53-1] at ¶¶ 41-49; Exhibits F-I), it became apparent that Union Carbide intended to repudiate the Agreement and at the same time pocket the payments made by Camden County.

20.

To preserve Camden County's rights and protect taxpayer money, Camden County filed the present lawsuit in Camden County Superior Court on July 27, 2022, which Union Carbide subsequently removed to this Court.

21.

At the time of its initial filing, this lawsuit included claims for breach of contract, because the Georgia Supreme Court had not yet ruled on the legality of the Referendum, as well as, a claim to recover the monies paid by Camden County to Union Carbide in the event the Georgia Supreme Court allowed the Referendum to stand.

22.

On September 27, 2022, Union Carbide filed a Motion to Dismiss, which the parties fully briefed and argued on January 17, 2023. Docs. [18], [27], [34], [47], and [48].

IV. <u>**The Georgia Supreme Court's Decision**</u>

23.

While the Motion to Dismiss was pending, on February 7, 2022, the Georgia Supreme Court issued its decision in the Appeal on whether the special election procedures under the Home Rule Paragraph allowed for the Referendum that repealed the Resolutions authorizing the Option Contract. Doc. [54-1] at 18.

24.

Specifically, the Georgia Supreme Court considered "whether the use of the referendum procedure is limited to the amendment or repeal of local acts applicable to a county's governing authority, as the County contends, or whether it also allows a county's electorate to seek a referendum on the amendment or repeal of measures that are adopted by a county's governing authority pursuant to subparagraph (a), like the Resolutions authorizing the County to enter into and extend the Option Agreement here." Id. at 21.

25.

After considering the text, the Georgia Supreme Court held that the Home Rule Paragraph "authorized the County's electorate to petition for the repeal of the Resolutions." Id. at 30.

26.

Therefore, under the holding of the Georgia Supreme Court, the Resolutions passed by the Board of Commissioners of Camden County that authorized the Option Contract with Union Carbide stand repealed.

27.

Because the Resolutions that "authorized" the Option Contract stand "repealed," the Board of Commissioners of Camden County had no authority to

enter into the Option Contract with Union Carbide, thereby rendering the Option Contract null and void since inception.

28.

As a result of the Georgia Supreme Court's decision, all payments made by Camden County to Union Carbide pursuant to the void Option Contract were unauthorized, ultra vires, and otherwise illegal.

29.

Following the decision of the Georgia Supreme Court, Camden County made a formal demand, through counsel, for Union Carbide to return $2,640,000 of taxpayer dollars, which as a result of the Referendum was paid to Union Carbide without authority. Union Carbide has refused the demand.

## **COUNT I – UNJUST ENRICHMENT/ MONEY HAD AND RECEIVED**

30.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

31.

The Resolutions passed by the Board of Commissioners of Camden County that authorized the Option Contract with Union Carbide have been "repealed" by the Referendum.

32.

Because the Resolutions stand repealed, the Option Contract has been rendered a nullity and void *ab initio*.

33.

With the Resolutions repealed, Camden County was without authority to pay $2,640,000 in public funds to Union Carbide, and Union Carbide is not entitled to retain such public funds.

34.

Despite the decision of the Georgia Supreme Court affirming the legality of the Referendum under which the authority for the Option Contract was repealed, Union Carbide has nonetheless refused Camden County's demand for return of the unauthorized payments.

35.

The Referendum by its express terms "repealed" the underlying authority for the Option Contract and did not—contrary to Union Carbide's arguments—effect any termination or repudiation of an otherwise valid contract.

36.

As a matter of law, Camden County is entitled to recover from Union Carbide the full amount of $2,640,000 of taxpayer dollars that was paid illegally and without authority. Howard v. Brantley Cnty., 260 Ga. App. 330, 332 (2003)

("Where public funds are illegally paid out by county officials or by some agency of the county, it is proper for the county to bring a suit for the recovery of the same."); Burke v. Wheeler Cnty., 54 Ga. App. 81 (1936) ("[A] wrongful payment made by a public officer is not a voluntary payment in so far as the public corporation is concerned.").

37.

In the alternative, Camden County is entitled to recover from Union Carbide the amount by which Union Carbide has been unjustly enriched as a result of receiving $2,640,000 in public funds without authorization.

38.

In addition to keeping the Property off the market, the Option Contract contemplated that Camden County would have the option to purchase the Property, for which Camden County would receive a credit in the amount of $2,115,000 towards the purchase price.

39.

The Option Contract also contemplated that Union Carbide would make reasonable commercial efforts to (i) subdivide the site to exclude a hazardous waste landfill and groundwater treatment system; (ii) obtain a revision of the existing environmental covenant to authorize use of groundwater from the site; and

(iii) substantially resolve the concerns raised in a 2015 review letter from the Georgia Department of Natural Resources.

40.

Despite claiming to have been "absolved" of any obligations under the Option Contract as a result of the Referendum, Union Carbide has refused to return to Camden County any portion of $2,640,000 in public funds.

41.

Union Carbide has not conferred any of the benefit to Camden County as contemplated under the Option Contract, which has since been rendered void by the Referendum.

42.

It would be inequitable and unjust for Union Carbide to retain public funds wrongfully paid to it by Camden County, while depriving Camden County any of the benefits contemplated under the void Option Contract.

43.

WHEREFORE, Camden County is entitled to recover from Union Carbide, (i) as a matter of law, the full amount of $2,640,000 of taxpayer dollars, which as a result of the Referendum was paid to Union Carbide without authority; or, (ii) in

the alternative, the amount by which Union Carbide has been unjustly enriched, which as a matter of both law and equity must be returned to Camden County.

## COUNT II – ATTORNEYS' FEES

44.

Camden County realleges and incorporates the above paragraphs as if fully set forth in this Count.

45.

Pursuant to O.C.G.A. § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

46.

Union Carbide has acted in bad faith and has caused Camden County unnecessary trouble and expense by refusing to return any portion of the $2,640,000 in public funds to Camden County, even though it was not authorized to receive such funds and has conferred none of the benefits to Camden County contemplated under Option Contract.

47.

As a result of the foregoing misconduct, Camden County is entitled to recover its attorneys' fees and expenses in the litigation pursuant to O.C.G.A. § 13-6-11 and otherwise under Georgia law.

**PRAYER FOR RELIEF**

WHEREFORE, Camden County demands the following relief and judgment against Union Carbide as follows:

(a) That Camden County is entitled to recover from Union Carbide the amount of **$2,640,000.00** in public funds as money had and received without authorization and/or that has unjustly enriched Union Carbide;

(b) That Camden County be awarded all its attorneys' fees and expenses of litigation against Union Carbide;

(c) That Camden County be awarded prejudgment interest against Union Carbide, at the maximum rate allowable by law; and

(d) That Camden County be awarded any other relief that the Court deems just and proper.

This 17th day of April, 2023.

/s/ Jeremy U. Littlefield
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Jeremy U. Littlefield*
Georgia Bar No. 141539
jlittlefield@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

John S. Myers
Georgia Bar No. 533150
John S. Myers, P.C.
P.O. Box 99
200 East Fourth Street
Woodbine, Georgia 31569
Phone (912) 510-8400
countyattorney@co.camden.ga.us

*Admitted Pro Hac Vice*

*Attorneys for Camden County*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I have served the foregoing **FIRST AMENDED COMPLAINT** on all parties by electronically filing it with the Clerk of the Court using the Court's electronic filing system.

This 17th day of April, 2023.

*/s/ Jeremy U. Littlefield*
Jeremy U. Littlefield