**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners,<br><br>    Plaintiff,<br><br>v.<br><br>UNION CARBIDE CORPORATION,<br><br>    Defendant. | Civil Action No. 2:22-cv-00077-LGW-BWC |

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Union Carbide Corporation ("UCC") hereby moves to dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), showing the Court as follows:

## I.      INTRODUCTION

For almost seven years, UCC agreed to keep thousands of acres it owns off the market to give Camden County (the "County") an exclusive right to buy the land for a proposed spaceport. It did so under an option agreement that the parties negotiated in 2015 and which the County commission approved resolutions to authorize. The County compensated UCC for giving it that exclusive right in the

option agreement, voluntarily and in accordance with the County commission's resolutions and the agreed-upon terms in the option agreement.

After all those years (and multiple agreements with UCC to extend the option period), the County's voters by referendum repudiated the agreement on March 8, 2022. As a result, the County did not purchase the land.

The County originally filed this lawsuit to force UCC to sell it the land, despite its voters' referendum. But after the Georgia Supreme Court upheld the referendum's validity, the County abandoned that claim. Now, through an amended complaint, the County seeks a return of the consideration it paid UCC for the option based on unfounded claims that the referendum retroactively invalidated the option agreement and that UCC has been unjustly enriched because the County failed to purchase the land.

Based on the facts alleged and the agreements at issue, the County's claims are not viable under Georgia law. Accordingly, the County's amended complaint should be dismissed.

## II.     STATEMENT OF FACTS

### A. The Option Agreement

At a June 3, 2015 Special Called Meeting, the County Board of Commissioners ("BOC") unanimously passed a resolution authorizing the County to purchase an option to buy approximately 3900 acres of land in Camden County

(the "Property") from UCC (the "Option Agreement") for a proposed commercial spaceport (the "2015 Resolution"). Dkt. 58 ¶ 4; **Exh. 1** (Dkt. 67-1) at pp. 2, 3; **Exh. 5** (Dkt. 67-5) at p.2; Dkt. 53-5 at p. 2; Mins. Of June 3, 2015 Special Meeting (**Exh. 2** (Dkt. 67-2)).[1] The BOC's Chairperson executed the Option Agreement at that meeting pursuant to the 2015 Resolution. **Exh. 2** (Dkt. 67-2); **Exh. 1** (Dkt. 67-1).

The County paid UCC a $960,000 "Option Price" to purchase the Option Agreement from UCC. **Exh. 1** (Dkt. 67-1) at p. 5 (§ 2.B). In return, UCC gave the County the following for the duration of the "Option Period," which began on July 13, 2015 and originally ended on July 13, 2017:

(1)   the exclusive right and option to buy the Property for $4,800,000 (the "2015 Purchase Price");

(2)   its agreement to not market the Property for sale to other prospective purchasers;

(3)   the unilateral right to terminate the Option Agreement for any reason; and

(4)   the right to access the Property at all reasonable times and for any reasonable purposes.

Dkt. 58 ¶¶ 5, 38; **Exh. 1** (Dkt. 67-1) at pp. 4 (§ 2.A), 6 (§ 3.A), 12 (§ 4.A(i)), 13 (§ 4.B), 14 (§ 5(ii)).

---

[1] The Court has taken judicial notice of the 2015 Resolution.  Dkt. 56.

The County subsequently negotiated and purchased two extensions of the Option Period for a total "Extension Period Price,"[2] comprised of the following:

(1) On July 27, 2017, the County purchased a two-year extension of the Option Period through July 13, 2019 for a "First Extension Period Price" of $960,000, in a First Amendment to the Option Agreement (the "First Amendment").

(2) On July 13, 2019, the County purchased another 18-month extension of the Option Period through January 13, 2021 for a "Second Extension Period Price" of $720,000, in a Second Amendment to the Option Agreement (the "Second Amendment").

**Exhs. 3** (Dkt. 67-3) at p. 1 (§ 3); Dkt. 53-3 at p.1 (§ 3); **Exh. 4** (Dkt. 67-4) at p. 2 (§ 3.A); Dkt. 53-4 at p. 2 (§ 3.A).  The County BOC passed resolutions authorizing each of those Option Agreement amendments and Extension Price payments to extend the Option Period (collectively with the 2015 Resolution, the "Resolutions"). Dkt. 58 ¶¶ 6, 7.

Thereafter were two additional amendments to the Option Agreement that collectively extended the Option Period through April 13, 2022.[3] **Exh. 5** (Dkt. 67-5)

---

[2] As amended, the Option Agreement defined the "Extension Period Price" to be the First Extension Period Price and the Second Extension Period Price, discussed below.  **Exh. 4** (Dkt. 67-4) at p. 3 (§ 3.A).

[3] By amendment, the "Option Period" was defined to include the "Original Option Period, First Extension Period, Second Extension Period, Third Extension Period

at p. 2 (§ 3.A); Dkt. 53-5 at p. 2 (§ 3.A); **Exh. 6** (Dkt. 67-6) at p. 1 (§ 3.A); Dkt. 53-6 at p.1 (§ 3.A). UCC gave those final two extensions to the County *at no cost.  Id.*

Thus, in return for the Option Price and Extension Price, the County received ***for almost seven years***: (1) the exclusive right and option, without obligation, to buy the Property from UCC at the 2015 Purchase Price, (2) the right to access the Property at all reasonable times and for any reasonable purposes, and (3) UCC's agreement to not market the Property for sale to any other prospective purchaser.

## B. The County Repudiated the Option Agreement by a Voter Referendum.

For almost seven years, the County opted not to exercise its option to purchase the Property under the Option Agreement. And, on March 8, 2022, County voters held a special election to approve a referendum repealing the BOC's resolutions authorizing the Option Agreement and the County's right and option to purchase the Property as of that date (the "Referendum").  Dkt. 58 at ¶¶ 11, 12, 15.

The BOC contested the Referendum's constitutionality through litigation with the voters and the probate court judge approving it. The BOC lost and appealed to the Georgia Supreme Court. Dkt. 58 at ¶¶ 13, 16-17. And in spite of the Referendum, the BOC sent letters to UCC during that litigation demanding that UCC sell the Property to the County. **Exhs. 7** and **8** (Dkt. 67-7 and 67-8); Dkt. 1-1 at Exhs. F and

---

and Fourth Extension Period." **Exh. 6** (Dkt. 67-6) at p. 2 (§ 3.A); Dkt. 53-6 at p.2 (§ 3.A).

H.   UCC rejected the BOC's demands to close on a sale of the Property to the County, because the County no longer had authority to purchase the Property. **Exh. 9 and 10** (Dkt. 67-9 and 67-10); Dkt. 1-1 at Exh. G and I. The Georgia Supreme Court ultimately held the Referendum was constitutional. *Camden County v. Sweatt*, 315 Ga. 498 (2023).  Dkt. 58 at ¶¶ 23-26.

### C. The County Filed this Lawsuit Against UCC.

While its appeal to the Georgia Supreme Court was pending, the BOC filed this lawsuit on behalf of the County against UCC. Dkt. 1-1. The BOC asked for an order of specific performance requiring UCC to sell the Property to the County, even though the County had repudiated the Option Agreement. Dkt. 1-1 at ¶¶ 56, 58. The Complaint also asserted alternative claims for damages in the amount of the total Option Price and Extension Period Price the County paid UCC to purchase the Option Agreement years earlier, based on theories that UCC had breached the Option Agreement, breached an implied duty of good faith and fair dealing, and was unjustly enriched by not closing on the sale of the Property to the County. *Id.* ¶¶ 51-71.

UCC moved to dismiss the Complaint on September 27, 2022 (Dkt. 18), and the Court heard argument on the motion on January 17, 2023. The Georgia Supreme Court subsequently issued its decision affirming the constitutionality of the Referendum. *Camden County v. Sweatt*, 315 Ga. 498 (2023). Dkt. 58 at ¶¶ 23-26. In

response to UCC's Notice of Supplemental Authority notifying the Court of the Georgia Supreme Court's decision, the County acknowledged that the Georgia Supreme Court's decision was dispositive of its breach of contract and breach of implied covenant of good faith and fair dealing claims and represented that it would abandon those claims. Dkt. 55. The County stated that it would nevertheless maintain its unjust enrichment claim.  *Id.*

On April 3, 2023, the Court ordered the County to file an amended complaint based on the County's representations in response to UCC's Notice of Supplemental Authority. Dkt. 57. In parallel, the Court denied UCC's September 27, 2022 Motion to Dismiss without prejudice. *Id.*

On April 17, 2023, the BOC filed a First Amended Complaint on behalf of the County. Dkt. 58. Count I of the First Amended Complaint is for "Unjust Enrichment/Money Had and Received." For that claim, the County alleges that the Referendum's May 8, 2022 repeal of the BOC's Resolutions rendered the July 2015 Option Agreement "a nullity and void *ab initio*." *Id.* at ¶¶ 31-32. The County avers that it therefore can recover the Option Price and Extension Price payments from UCC because they were made "illegally and without authority," citing *Howard v. Brantley Cnty.*, 260 Ga. App. 330 (2003) and *Burke v. Wheeler Cnty.*, 54 Ga. App. 81 (1936). *Id*. at ¶¶ 33-36.

The County alternatively asserts in Count I that it can recover the Option Price and Extension Price payments because it allegedly did not receive any benefit under the Option Agreement and UCC therefore has been "unjustly enriched" by those payments. *Id.* at ¶¶ 37-40.

Count II is a derivative claim for attorneys' fees under O.C.G.A. § 13-6-11. *Id.* at ¶¶ 44-47.

The County's First Amended Complaint does not state a claim for relief under Georgia law and should be dismissed.

### III.   ARGUMENT AND CITATION OF AUTHORITIES

#### A. Standard of Review.

The Court should dismiss a complaint under Rule 12(b)(6) if it does not allege facts "that allow[] the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Abdulla v. S. Bank*, CV 121-099, 2022 U.S. Dist. LEXIS 84616, *6-7 (S.D. Ga. May 10, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal is appropriate when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). In making this determination, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Also, on a motion to dismiss under Rule 12(b)(6), the Court may consider documents referenced in a complaint or attached to a motion to dismiss if the document is central to the plaintiff's claim and its authenticity is not challenged. *Basson v. Mortgage Elec. Registration Sys.*, 741 Fed. Appx. 770, 771 (11th Cir. 2018); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Court also can take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment. *Overstreet v. Ga.*, 2022 U.S. App. LEXIS 24827, at *10 (11th Cir. Sept. 2, 2022). Such records include county commission meeting minutes. *Id.*; *see also Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1242-43 (11th Cir. 1991) (affirming judicial notice of county commission meeting minutes).

Georgia law governs substantive issues in this diversity action. *ML Healthcare Servs., LLC v. Publix Super Mkts.*, 881 F.3d 1293, 1299 (11th Cir. 2018).

## B. The First Amended Complaint Does Not State a Claim for Money Had and Received.

The First Amended Complaint does not state a claim for money had and received for the following reasons:

### i. The Option Agreement and County Payments Were Authorized and Lawful When They Were Made.

The First Amended Complaint admits that the Resolutions, the Option Agreement, and the County's Option Price and Extension Price payments were authorized and valid. The First Amended Complaint admits, as it must, that the 2015

9

Resolution "authoriz[ed] Camden County to enter into" the Option Agreement, and that the BOC "adopted an additional four resolutions . . . that authorized amendments by which the option period for Camden County to purchase the Property was extended through April 23, 2022." Dkt. 58 ¶¶ 4, 6. It admits further that the County paid UCC the Option Price and Extension Period Price "pursuant to the terms of the Option Contract and subsequent amendments, as authorized by the Resolutions." *Id.* ¶ 7. The First Amended Complaint makes ***no*** claim that the Resolutions, the Option Agreement, or the County's payments of the Option Price and Extension Price were not authorized and legally valid when made.

The Referendum ***years later*** did not make the Option Agreement and the County's Option Price and Extension Period Price payments "unauthorized" or "illegal" when they were made. The County cannot cite any legal authority supporting such a claim. And such a rule would be an absurdity. It would mean that a county commission could pass a resolution authorizing an agreement with a citizen, pay the citizen for conferring a benefit on the county, and then repeal the resolution after receiving the benefit and sue to get its money back. It makes no difference that the subsequent repeal here was by a voter Referendum: the same absurd result would exist.

ii.   **The *Burke* and *Howard* Cases Cited by the County are Inapposite.**

The *Burke* and *Howard* cases cited in the First Amended Complaint are inapposite. Those cases addressed situations where statutes precluded the county governments from entering the contracts at issue. In *Burke v. Wheeler County*, a county board of education entered a contract with and paid an accountant to audit the county tax collector's books. 54 Ga. App. at 82, 85 (1936). The Georgia Court of Appeals held that "the county board of education could not legally make this kind of a contract" because there was "no authority in law" for the county board of education to do so. *Id.* at 85-86. The court further explained, "It is illegal to divert public funds from their particular purpose. School funds are to be used for school purposes," citing Code § 32-942 (now O.C.G.A. 20-2-411, which states, "school funds shall be used for educational purposes and may be used to pay the salaries of personnel and to pay for the utilization of school facilities, including school buses, for extracurricular and interscholastic activities, including literary events, music and athletic programs within individual schools and between schools in the same or in different school systems when such activities are sponsored by local boards of education as an integral part of the total school program, and for no other purpose"). *Id.* at 86.

Likewise, in *Howard v. Brantley County,* a county hired and paid $190,600 to a contractor for road construction work in violation of O.C.G.A. §§ 32-4-64 and 32-

4-64, which precluded the county from negotiating contracts in excess of $20,000 without a going through a competitive bidding process. 260 Ga. App. 330, 332 (2003). Because of that statutory violation, the court held that the contract "was illegal as beyond Brantley County's authority." *Id.* at 330-32.

The County does not allege that a statute or other law precluded the Option Agreement or the County's Option Price and Extension Price payments. Thus, the *Burke* and *Howard* cases do not apply.

> ### iii. Count I Violates the Constitutional Prohibition Against Retroactive Laws and Laws Impairing Citizens' Lawful Contracts.

The County's claim also violates the prohibition against retroactive laws and laws that impair a contractual obligation to a citizen in the Georgia Constitution's Bill of Rights. Ga. Const. Art. I, § I, Para. X ("No . . . retroactive law, or laws impairing the obligation of contract . . . .").[4]  The Georgia Supreme Court has long held that "a repealing act will not be given a retroactive operation, so as to divest previously acquired rights, or to impair the obligation of a contract lawfully made by virtue of and pending the existence of the law repealed." *Busbee v. Ga. Conf., Am. Asso. of Univ. Profs.*, 235 Ga. 752, 765 (1975) (quoting *Bank of Norman Park v. Colquitt Cnty.*, 169 Ga. 534, 536 (1929)).

---

[4] This Paragraph of the Constitution's Bill of Rights protects only citizens. It does not protect the government. *State Highway Dept. v. Bass*, 197 Ga. 356, 365-66 (1944).

For example, in *Busbee*, the Board of Regents of the University System of Georgia (the "Regents") executed contracts with faculty members increasing their salaries based on an appropriations bill enacted by the Georgia General Assembly and approved by the governor. Later, the General Assembly amended the appropriations bill to reduce the funds available to the Regents, and the Regents announced that the faculty would not receive the increased salaries pursuant to their contracts. The faculty sued to enforce their contracts for the increased salaries. The Georgia Court of Appeals held that the faculty's contracts for the increased salaries were valid and binding, citing Ga. Const. Art. I, § I, Para. X. Quoting *Bank of North Park*, the court explained that "a repealing act will not be given a retroactive operation, so as to divest previously acquired rights, or to impair the obligation of a contract lawfully made by virtue of and pending the existence of the law repealed." *Id.* at 765.

The County's claim that UCC must return the Option Price and Extension Price payments because the Referendum's repeal of the Resolutions retroactively invalidated the Option Agreement would clearly violate Ga. Const. Art. I, § I, Para. X. UCC has the right to those payments under the express terms of the Option Agreement. To require UCC to return those payments based on the Referendum would divest it of that right and impair a contract lawfully made before the

Referendum passed. For this additional reason, Count I of the First Amended Complaint fails to state a claim for relief under Georgia law.

### iv.   The Voluntary Payments Doctrine Bars the County's Claim.

The doctrine of voluntary payments, codified at O.C.G.A. § 13-1-13, also bars the County's claim.   O.C.G.A. § 13-1-13 provides, "Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party *are deemed voluntary and cannot be recovered* unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." (emphasis added).

The party seeking to recover payments made "bears the burden of establishing the inapplicability of the voluntary payment doctrine." *Ameris Bank v. Lexington Ins. Co.*, 2017 U.S. Dist. LEXIS 155148, at *11 (S.D. Ga. Sept. 21, 2017); *accord Montgomery Cnty. v. Sharpe*, 261 Ga. App. 389, 390 (2003). That burden is to show "that its payment was not voluntarily made because certain material facts were not known at the time of payment, or because a valid reason existed for its failure to determine the truth." *Applebury v. Teachers' Ret. Sys.*, 275 Ga. 194, 195 (2005).

The County has not alleged that it lacked knowledge of any material facts when it paid UCC the Option Price and Extension Price. Nor has the County alleged

that there was any "misplaced confidence" or "artifice, deception, or fraudulent practice used by [UCC]" to acquire the payments.  Where a plaintiff fails to allege such facts, a claim for money had and received should be dismissed. *E.g.*, *Kuchenmeister v. Healthport Techs., LLC*, 309 F. Supp. 3d 1342, 1347-48 (N.D. Ga. 2018), aff'd 753 Fed. Appx. 794, 798-99 (11th Cir. 2018); *Cotton v. Med-Cor Health Info. Solutions*, 221 Ga. App. 609, 611-12 (1996). Indeed, "When money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back . . . ." *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284-85 (2000) (affirming dismissal of complaint).

### C. The First Amended Complaint Also Does Not State a Claim for Unjust Enrichment.

An unjust enrichment claim can exist only if, in the absence of a contract, a plaintiff conferred compensation upon a defendant and did not receive a benefit in return, and the lack of such benefit was unjust. *Hesed-El v. Aldridge Pite, LLP*, CV 119-162, 2020 U.S. Dist. LEXIS 103341, at *20-21 (S.D. Ga. June 12, 2020); *Clark v. Aaron's Inc.*, 914 F. Supp. 2d. 1301, 1309 (N.D. Ga. 2012).

Moreover, under the voluntary payment doctrine, "a party is not entitled to the recovery of restitutionary damages for unjust enrichment where there has been a voluntary payment of the money received." *Cotton*, 221 Ga. App. at 612; *see also Kuchenmeister*, 753 Fed. Appx. at 798-99 (affirming dismissal of plaintiff's unjust

enrichment claim to recover a payment to defendants for fulfilling medical records requests, based on Georgia's voluntary payment doctrine); *Ill. Union Ins. Co. v. William C. Meredith Co.*, 2009 U.S. Dist. LEXIS 140145, at *10 (N.D. Ga. June 5, 2009) (quoting *Cotton*).

### i. The Option Agreement Precludes the County's Unjust Enrichment Claim.

An unjust enrichment claim can exist only if there was no contract between the parties that governed the transaction at issue. *Hesed-El*, 2020 U.S. Dist. LEXIS 103341, at *20-21; *nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1266 (N.D. Ga. 2012); *S-D RIRA, LLC v. Outback Prop. Owners' Ass'n*, 330 Ga. App. 442, 443 (2014). Here, the First Amended Complaint admits that the County paid the Option Price and Extension Price pursuant to the Option Agreement, in order to receive the exclusive right to purchase the Property for almost seven years under the Option Agreement.[5] Dkt. 58 ¶¶ 5, 7. Indeed, the County admits that it paid UCC the Option Price and Extension Period Price "pursuant to the terms of the Option Contract and subsequent amendments, as authorized by the Resolutions." *Id.* at *¶ 7.* Because those payments were made

---

[5] The County may argue that the Option Agreement does not now exist because of the March 8, 2022 Referendum. But the Referendum did not affect the existence of the Option Agreement when the County paid the Option Price and Extension Period Price under it in 2015, 2017 and 2019, or agreed in the Option Agreement that those payments were nonrefundable at the time of making them.

pursuant to that contract, the County's unjust enrichment claim fails as a matter of law.

### ii.  The County Received a Benefit in Return for the Option Price and Extension Price.

The County's admitted receipt of benefits under the Option Agreement in return for the Option Price and Extension Price payments also precludes its unjust enrichment claim.

An option is "[t]he obligation by which one *binds himself to sell*, and *leaves it discretionary with the other party to buy*," and is "a contract by which the owner of property agrees with another person that *he shall have a right to buy the property at a fixed price within a certain time*." *Gulf Oil Corp. v. Willcoxon*, 211 Ga. 462, 465 (1955) (emphasis added). "Under an option contract, 'the offeror accepts consideration *in exchange for his promise to keep the offer open' for a stated time*." *Pagar, LLC v. CP Summit Retail, LLC*, 316 Ga. App. 668, 671 (2012) (emphasis added). To wit, the benefit received by an option purchaser is the landowner's agreement to sell its land to the purchaser at a certain price for a defined time period, without the purchaser having any obligation to ultimately buy the land. The landowner encumbers its land with that obligation and, by agreement, gives up the opportunity to market the land to other prospective purchasers (including purchasers willing to pay a higher price) during the option period. While forgoing that

opportunity, the landowner also assumes the risk that the option purchaser will not exercise the option to buy the land and leave the landowner emptyhanded.

The First Amended Complaint admits (and the Option Agreement shows) that the County received those very benefits under the Option Agreement for almost seven years. UCC gave the County the exclusive right, without obligation, to buy the Property for a 2015 Purchase Price for that entire time and agreed not to market the Property for sale to anyone else. Dkt. 58 ¶ 5; **Exh. 1** (Dkt. 67-1) at pp. 4 (§§ 1, 2.A), 6 (§§ 2.E, 3.A), 14 (§ 5(ii)); **Exh. 3** (Dkt. 67-3) at p. 1 (§ 3); **Exh. 4** (Dkt. 67-4) at p. 2 (§ 3.A); **Exh. 5** (Dkt. 67-5) at p. 2 (§ 3.A); **Exh. 6** (Dkt. 67-6) at p. 1 (§ 3.A). The Option Price and the Extension Price were the consideration the County paid to receive those benefits under the Option Agreement. Dkt. 58 ¶¶ 5-7; **Exh. 1** (Dkt. 67-1) at p. 4 (§§ 1, 2.A), 6 (§§ 2.E, 3.A), 14 (§ 5(ii)); **Exh. 3** (Dkt. 67-3) at p. 1 (§ 3); **Exh. 4** (Dkt. 67-4) at p. 2 (§ 3.A).  The County's claim that it did not receive a benefit in return for the Option Price and Extension Price is simply wrong, based on its admissions in the First Amended Complaint and the terms of the Option Agreement and its amendments. Indeed, "[t]he retention of a benefit is not unjust where defendants have paid for it." *Dixie Communs. Sys. v. Travelers Cas. & Sur. Co. of Am.*, 2021 U.S. Dist. LEXIS 161809, *15 (S.D. Ga. Aug. 26, 2021).

The County's claim that the Option Agreement entitled it to apply a portion of the Option Price and Extension Price as a credit toward the 2015 Purchase Price

of the Property is a red herring. The Option Agreement clearly stated that the credit was available "against the Purchase Price of the Property to be taken at Closing hereunder." **Exh. 1** (Dkt. 67-1) at p. 5 (§ 2.D(iii)). The County admits that, through the Referendum, it elected ***not*** to purchase the Property.  Dkt. 58  at ¶¶ 11-15. Consequently, there was no closing or payment of the 2015 Purchase Price against which the credit could have been applied.

Of course, a credit against a purchase price is ***not*** a refund. Indeed, the County expressly agreed that the Extension Price "shall be nonrefundable to [the County] under any circumstances" (including the County's termination of the Option Agreement).  **Exh. 2** (Dkt. 67-2) at p. 5 (§ 2.D(ii)). The County also expressly agreed that the Option Price "shall be nonrefundable to [the County] under any circumstances" (including the County's termination of the Option Agreement), subject to only two narrow exceptions: (1) if UCC was unsuccessful in resolving certain concerns related to the Property raised by the Department of Natural Resources ("DNR") "by the end of the Option Period" and (2) if UCC was unsuccessful in subdividing the Property from other land owned by UCC to excluded the other land "from any sale of the" Property "during the Option Period."[6] *Id.* at p.

---

[6] These two narrow exceptions expressly did not apply to the Extension Period Price, which the Option Agreement and all amendments thereto maintained as distinct from the Option Price for the non-refundability provision of Section 2.D(i) and (ii). **Exh. 1** (Dkt. 67-1) at p. 4-5 (§§ 2.A and B); **Exh. 3** (Dkt. 67-3) at pp. 1-2 (§§ 3, 4); **Exh. 4** (Dkt. 67-4) at p. 2 (§§ 3, 4); **Exh. 5** (Dkt. 67-5) at p. 2 (§§ 3, 4); **Exh. 6** (Dkt. 67-

2 (first recital on the page), p. 5 (§ 2.D(ii)), p. 14 (§ 5(iv)(a)). The County repudiated

the Option Agreement on March 8, 2022, a month before the Option Period expired

on April 13, 2022. Indeed, the County admits that UCC was required to accomplish

the subdivision and resolve the DNR issue "prior to the closing of the purchase of

the Property," and the County repudiated the Option Agreement on March 8, 2022

such that no closing occurred. Dkt. 58 ¶ 9. Accordingly, the County does not (and

cannot) allege that either exception to the express non-refundability of the Option

Price applies.[7]

For each of these reasons, Count I's unjust enrichment claim fails to state a

claim for relief under Georgia law.

### iii. Georgia's Voluntary Payment Doctrine Precludes the County's Unjust Enrichment Claim.

Lastly, as discussed above, Georgia's voluntary payment doctrine precludes

the recovery of money (including under an unjust enrichment claim) that was

voluntarily paid to another party, unless the plaintiff can show that the voluntary

---

6) at p. 1 (§ 3.A). (defining the "Extension Period Price" and "Option Price"
distinctively and not revising Section 2.D(ii) to make the non-refundability of the
Extension Period Price subject to any exception like the Option Price).

[7] The First Amendment Complaint also alleges that the subdivision and resolution
of the DNR issue were "intended to benefit Camden County," apparently suggesting
the County's failure to receive them supports its unjust enrichment claim. *See* Dkt.
58 ¶ 9. But of course, the subdivision and resolution of the DNR issue stood to
benefit the County ***only if*** it took ownership and possession of the Property by
purchasing the Property, which it elected to not do through the Referendum.

payment doctrine does not apply. Plaintiff has not alleged facts that would show that the voluntary payment doctrine does not apply. For this additional reason, the County's unjust enrichment claim fails to state a claim for relief under Georgia law.

### D. The County's Derivative Claim for Attorneys' Fees Fails Along with Its Underlying Claims.

A claim for attorneys' fees under O.C.G.A. § 13-6-11 is a derivative claim that should be dismissed if there is no underlying substantive claim. *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 346 Ga. App. 548, 562 (2018). Because the First Amended Complaint has failed to plead a viable underlying claim, Count II of the First Amended Complaint for attorneys' fees therefore also should be dismissed.

## IV.   CONCLUSION

For these reasons, the First Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

Respectfully submitted this 1st day of May, 2023.


[signature on following page]

/s/ *Clay Massey*
W. Clay Massey
Georgia Bar No. 476133
Clay.massey@alston.com
*Admitted Pro Hac Vice*
Douglas S. Arnold
Georgia Bar No. 023208
Doug.arnold@alston.com
*Admitted Pro Hac Vice*
Shannon N. Vreeland
Georgia Bar No. 472552
Shannon.vreeland@alston.com
*Admitted Pro Hac Vice*

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Office: (404) 881-7000
Fax: (404) 881-7777

*-and-*

James A. Bishop
Georgia Bar No. 058600
*jbishop@bishopfirm.com*
THE BISHOP LAW FIRM
465 Sea Island Road
St. Simons Island, GA 31522
Telephone: (912) 264-2390
Facsimile: (912) 264-5859
jbishop@bishopfirm.com


*Counsel for Defendant Union Carbide*
*Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners, | |
| Plaintiff, | Civil Action No. 2:22-cv-00077-LGW-BWC |
| v. | |
| UNIION CARBIDE CORPORATION, | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT via the Court's CM/ECF filing system, which will automatically send electronic notice to all attorneys of record.

This 1st day of May, 2023.

/s/ *Shannon Vreeland*
Shannon Vreeland