

**LITIGATION AND REGULATORY LAW**

**RICHARD L. ROBBINS**
DIRECT LINE: 678-701-9320
Email: rrobbins@robbinsfirm.com

June 8, 2022

**VIA FEDERAL EXPRESS**
**AND ELECTRONIC MAIL**

Douglas S. Arnold
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
doug.arnold@alston.com

  Re: *Option Agreement by and between Camden County and Union Carbide Corporation, dated July 13, 2015, as amended (the "Agreement")*

### NOTICE OF DEFAULT AND DEMAND FOR CURE

Dear Mr. Arnold:

  This law firm represents Camden County ("the County"), the Grantee under the above-referenced Agreement. We are directing this letter to you as counsel for Union Carbide Corporation ("UCC"), the Grantor. If you require the County to strictly comply with the notice provision in the Agreement, please let us know and we will direct this correspondence accordingly.

  As you know, on April 12, 2022, the County exercised its Option to purchase the Property under Paragraph 2.E of the Agreement. Upon the County's exercise of the Option, the Agreement requires "the parties [to] proceed diligently in a cooperative manner and in good faith to close on the transaction within not more than 90 days from and after such notice is received by Grantor, or such other date as the parties may mutually agree in writing." In direct breach of the Agreement, UCC disavowed the existence of any obligations under the Agreement, claiming in a letter dated May 16, 2022, that "there is no longer an Option for the County to exercise" due to the referendum that purported to repeal the resolutions authorizing the County's execution of the Agreement.

Douglas S. Arnold
June 8, 2022
Page 2

UCC's position that the County lacks authority to close on the purchase of the Property pursuant to the terms of the Agreement is without merit.  <u>First</u>, UCC and the County executed the Agreement on July 13, 2015, almost seven years ago.  In contemplation of the purpose of the Agreement, the County expended in excess of $10.3 million in reliance upon its Option rights.  At no point did UCC take the position that the Agreement was invalid or unauthorized.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Given the course of conduct over seven years, UCC cannot, in good faith, take the contrary position that there is not any valid and enforceable contract.

<u>Second</u>, the County continues to maintain that the Board's resolution authorizing execution of the Agreement (as well as the subsequent exercise of the Option pursuant to the Agreement) were valid and legal under Georgia law.  The County's position is set forth fully in the briefs filed with the Supreme Court of Georgia, in the case styled *Camden County v. Sweatt, et al.*, Case No. S22A0837 (the "Appeal").  For all the reasons stated in the County's briefs, no referendum was necessary to authorize the County to execute the Agreement and consummate the purchase.  A minority of citizens cannot invalidate a county's basic function, especially years after-the-fact and with full disclosure of the county's actions.  Until such time as the Georgia Supreme Court confirms the legality and validity of the referendum, UCC's conclusion that "there is no longer an Option for the County to exercise" is, at best, premature.

As reflected in its prior correspondence with UCC, the County would have preferred to proceed in a cooperative manner with the parties working together in good faith to carry out the purpose of the Agreement.  UCC, however, refused any further extension to allow the courts to resolve the legal issues surrounding the referendum.  Accordingly, the County had no choice but to exercise the Option on the last permissible day under the Fourth Amendment to preserve its rights and its substantial investment in the project.  Pursuant to those same rights, the County must also put UCC on notice of its default as required under Paragraph 11.B.  By its letter dated May 16, 2022, UCC defaulted on the Agreement when it repudiated its contractual obligations, including the duty under Paragraph 2.E to "procced diligently" and "in good faith" to close the transaction within 90 days (or July 11, 2022).  UCC must cure its defaults by (i) withdrawing its repudiation of the Agreement; and (ii) complying with its obligation to "proceed diligently" and "in good faith" to close on the transaction by the closing deadline.  The County refers UCC to the email dated April 19, 2022 from the County's real estate counsel (Amy Edwards) for a detailed outline of the numerous closing items that need to be completed by the parties.  In the event UCC fails to cure its default within thirty (30) days of this letter in accordance with Paragraph 11.B, the County will have no choice but to commence legal action against UCC to enforce its contractual rights as permitted under the Agreement and otherwise under Georgia law, including by filing of a Lis Pendens against the Property in connection with the legal action.

Douglas S. Arnold
June 8, 2022
Page 3

To be clear, the County has no desire to engage in litigation but must take these positions to enforce and preserve its rights due to UCC's repudiation of the Agreement. To the extent UCC's actions are truly driven by concerns regarding the "significant cost" of closing as referenced in your letter, UCC can avoid those costs by agreeing to extend all deadlines under the Agreement, which would allow the parties to preserve their respective rights without incurring costs during the pendency of the Appeal. The County remains willing to enter into such extensions with UCC, including an extension of the closing date, which is expressly permitted under Paragraph 2.E of the Agreement. An extension of the closing date to ninety (90) days from the date of disposition of the Appeal would be a prudent course for both parties by preserving the status quo. In the event the Georgia Supreme Court nullifies the referendum, presumably UCC will honor its contractual obligations and move forward with closing the transaction.

Finally, we want to clarify that there is presently no injunction that would prohibit the parties from continuing to perform their obligations under the Agreement or otherwise proceeding under its terms. Nor is there any prohibition that would prevent the parties from entering into an extension of deadlines thereunder. Indeed, on January 20, 2022, the Superior Court of Camden County (Judge Scarlett) entered a final order on the merits denying plaintiffs' request for an injunction and dismissing the lawsuit against the County in the case styled *Goodman, et al. v. Camden County*, Civil Action No. SUCV2021001121. Although Judge Scarlett later granted an injunction pending appeal of his final order, that appeal has since been dismissed. Accordingly, Judge Scarlett's order denying the injunction and dismissing the lawsuit against the County is final and does not prevent the parties from working towards closing, or at least preserving their rights to do so.

Please let us know how UCC intends to proceed. The County remains willing to engage in discussions with UCC to resolve the defaults or otherwise reach an agreement with UCC on a path forward without commencement of legal action. If it would be productive to have an in-person meeting, we can make ourselves available. With the 90-day closing deadline approaching, however, time is of the essence.

Sincerely,

*Richard L. Robbins*

Richard L. Robbins

RLR:jde

cc: John S. Myers, Esq.
     Steve L. Howard
     Camden County Board of Commissioners
     Amy L. Edwards, Esq.
     Jeremy U. Littlefield, Esq.