**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

<table>
<tr><td>

CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners,

    Plaintiff,

v.

UNION CARBIDE CORPORATION,

    Defendant.

</td><td>

Civil Action No. 2:22-cv-00077-LGW-BWC

</td></tr>
</table>

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Union Carbide Corporation ("UCC") files this Reply Brief in further support

of its Motion to Dismiss Plaintiff Camden County's First Amended Complaint.

## I.      INTRODUCTION

Camden County's Response asserts arguments that turn Georgia law and the

Option Agreement on their heads. The First Amended Complaint admits that the

County's purchase of the Option Agreement was authorized by the Resolutions

lawfully passed by the BOC at that time. The Amended Complaint does not allege

that any statute or other law precluded the Option Agreement or the County's

payments to purchase it. And the Referendum's repudiation of the Option

Agreement did not (and could not under the Georgia Constitution) invalidate the

Option Agreement retroactively.  Thus, contrary to the County's arguments, the BOC has no legal basis to demand UCC's return of the Option Price and Extension Price Payments.

Also wrong are the County's arguments against the application of the voluntary payments doctrine precluding the County's claims.  And the County's claim that UCC was unjustly enriched simply ignores the benefits the County received under the Option Agreement.  Through the Option Agreement, the County purchased (and received to its benefit) an option that gave it the exclusive right, without obligation, to purchase the Property for a price set in 2015, for almost seven years, and required UCC to keep the Property off the market for that entire time.

The Amended Complaint therefore does not state claims for relief under Georgia law.  The Court should dismiss the County's claims against UCC.

## II.     ARGUMENT AND CITATIONS OF AUTHORITIES

### A.   The Amended Complaint Admits that the Option Agreement and Payments Were Authorized When Made.

The County admits in its Amended Complaint that the Option Agreement and the County's Option Price and Extension Period Price payments were authorized – and thus lawful – when made. Dkt. 58 ¶ 4 (admitting that the 2015 Resolution "authoriz[ed] Camden County to enter into" the Option Agreement); ¶ 5 (admitting the County was "authorized by the Initial Resolution" to enter into the Option Agreement and to "pa[y] to Union Carbide the sum of $960,000 for the exclusive

right – for an initial option of period of two years – to purchase the Property for the total agreed upon price of $4,800,000"); ¶ 6 (admitting the BOC "adopted an additional four resolutions . . . that authorized amendments by which the option period for Camden County to purchase the Property was extended through April 23, 2022"); ¶ 7 (admitting the County paid UCC the Option Price and Extension Period Price "pursuant to the terms of the Option Agreement and subsequent amendments, as authorized by the Resolutions").

The Amended Complaint contains no allegations that any statute or other law precluded the County from entering the Option Agreement and making the Option Price and Extension Period Price payments.[1]  Thus, as explained on pages 11 and 12 of UCC's Motion, the County has misrelied on the *Howard* and *Burke* cases for demanding a refund of the Option Price and Extension Period Price payments. Those two cases simply are inapposite here.

In sum, the County cites no legal authority to support its claim that a party must refund a county government's lawful payments under a contract if the county repeals its prior approval of the contract and payments years later.  Consequently,

---

[1] The County's argument in footnote 1 of its Response is misplaced.  As the County admits in the Amended Complaint, its payments to purchase the Option Agreement were authorized by the BOC's resolutions.  UCC's statements in its Motion to Dismiss the County's original Complaint quoted in footnote 1 of the County's Response concerned the County's unauthorized payment of the *Purchase Price* if UCC were forced to close on the sale of the Property to the County in the face of the Referendum.  Dkt. 18 at p. 18.

the County's claim for "money had and received" to recover the Option Price and Extension Period Price payments should be dismissed.

**B.   The Georgia Constitution and Voluntary Payments Doctrine Each Preclude the County's Claim.**

In fact, Georgia law is unequivocal that the County cannot seek a refund of its Option Price and Extension Period Price payments based on a repeal of the Resolutions, for the reasons discussed in UCC's Motion and reiterated below.

**i.   The Georgia Constitution precludes a government's retroactive impairment of a contractual obligation to a person through a repeal of a prior law or authorization.**

On pages 12-14 of its Motion, UCC discussed that the Georgia Constitution's Bill of Rights precludes any "retroactive law . . . impairing the obligation of a contract" to any person.  Ga. Const. Art. I, § I, Para. X.  Moreover, the Georgia Supreme Court long has held that "a repealing act *will not be given a retroactive operation*, so as to divest previously acquired rights, or to impair the obligation of a contract lawfully made by virtue of and pending the existence of the law repealed." *Busbee v. Ga. Conf., Am. Asso. of Univ. Profs.*, 235 Ga. 752, 765 (1975) (emphasis added) (quoting *Bank of Norman Park v. Colquitt Cnty.*, 169 Ga. 534, 536 (1929)).

The County tacitly conceded the unconstitutionality of its claim on page 23 of its Response, arguing "the Referendum was retroactive in its effect" and "[t]he very purpose of the Referendum was to impair the legality of the Option Agreement . . . ."

4

Dkt. 68 at p. 23.  The Georgia Constitution's preclusion of the County's claim is clear.

The County wrongly argues that the Georgia Constitution's preclusion of its claim should not be considered on a Rule 12(b)(6) motion.  But the County concedes, as it must, "[i]f the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."  Dkt. 68 at p. 19; *Lefrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (dismissal based on affirmative defense is proper "if the complaint shows on its face that the defense applies").  Here, the Amended Complaint claims that the Referendum retroactively impaired UCC's right under the Option Agreement to receive the County's Option Price and Extension Period Price payments.  That claim is, on its face, subject to the Georgia Constitution's preclusion of any "retroactive law . . . impairing the obligation of a contract" to any person.  Ga. Const. Art. I, § I, Para. X; *Busbee*, 235 Ga. at 765.  It is therefore properly subject to dismissal under Rule 12(b)(6).

Also, contrary to the County's claim, UCC was not required to file a lawsuit challenging the Referendum in order to assert the Constitution's prohibition against retroactive laws impairing a person's contractual rights as a defense against the County's claims in this case.  The County cites no legal authority for that argument.  Indeed, the Referendum was a political controversy and proceeding *between the County and its voters* over whether *the County* should *continue to have* the Option

Agreement and purchase the Property under it.[2]  *See, e.g.*, Dkt. 68 at p. 11 ("It was

these Resolutions that were 'repealed' by the Referendum *on March 8, 2022*. Upon

'repeal' of the Resolutions, the Option Contract was *no longer* authorized.")

(emphasis added).  And UCC's constitutional defense in this case is not a challenge

to the Referendum.  Rather, it is a defense against the County's unconstitutional and

unfounded *claim in this case* that the Referendum applies retroactively to require

UCC's refund of payments the County voluntarily made to purchase the Option

Agreement and extensions years earlier.

Lastly, the County's argument that it can recover the Option Price and

Extension Period Price payments even if its claim is unconstitutional because UCC

is "refusing to perform its remaining obligations under the Option Contract" is

incorrect and makes no sense.   Dkt. 68 at p. 24.  The unconstitutionality of the

County's claim does not depend on any alleged nonperformance under the Option

Agreement.  The County's claim is unconstitutional because it demands a retroactive

application of the Referendum to impair UCC's preexisting contract rights.

Also, UCC does not have any "remaining obligations" under the Option

Agreement.  The County repudiated the Option Agreement; UCC therefore no longer

has any performance obligations under it.  Accordingly, the County's claim that

---

[2] Also, nothing in the Referendum said that it applied retroactively, much less to
purportedly require UCC to refund the County's payments years before the
Referendum.

UCC is "refusing to perform its remaining obligations under the Option Contract"

makes no sense.

### ii. The voluntary payments doctrine precludes the County's claim.

The County's arguments against the application of the voluntary payments

doctrine distorts the doctrine and the cases applying it.  The voluntary payments

doctrine means that a *party who paid money to another cannot* get that money back

from the person in a lawsuit unless the party seeking to recover the money shows

that the payment "*was not voluntarily made* because certain material facts were not

known at the time of payment, or because a valid reason existed for its failure to

determine the truth." *Applebury v. Teachers' Ret. Sys.*, 275 Ga. 194, 195 (2005)

(emphasis added).  Contrary to the County's argument (Dkt. 68 at p. 20), the doctrine

applies *unless (not if)* the party who paid the money shows it that it was paid

involuntarily because of a mistake.  Here, the County admits that it "is **not** seeking

to undo a payment made to Union Carbide on the grounds that it was paid by mistake

or due to a misunderstanding . . . ." Dkt. 68 at p. 20 (emphasis added).

Indeed, the Amended Complaint does not allege the County lacked knowledge

of any facts that existed at the time it entered the Option Agreement and made the

Option Price and Extension Period Price payments.[3]  The County's argument that it

---

[3] The Amended Complaint also does not claim that the County entered the Option
Agreement and made the payments because of an ignorance of the law.  The County
in fact admits that it had no ignorance of the law at that time.  Dkt. 68 at p. 19.

did not know the Resolutions authorizing the Option Contract would be repealed years later is beside the point.  Dkt. 68 at p. 19.  The Referendum's future repeal of the Resolutions approving the Option Agreement was not a fact that existed at the time the County made the payments to have rendered those payments *involuntary* under the doctrine.

The County's reliance on *Burke* to oppose the voluntary payments doctrine in this case ignores the distinguishing fact of that case.  In *Burke*, the board of education's contract with the accountant was void and its payments to him were wrongful and involuntary because *at that time* a statute—Code § 32-942 (now O.C.G.A. § 20-2-411)—made them illegal.  *Burke v. Wheeler County*, 54 Ga. App. 82, 85-86 (1936).  Here, no law made the Option Agreement or the County's payments of the Option Price and Extension Period Price illegal at the time it made those payments.  Thus, *Burke* is inapposite.[4]

Likewise, the County's reliance on *Montgomery County v. Sharpe* is misplaced. *Montgomery County* distinguished *Burke* because *Burke* involved a contract that was void due to its illegality under an existing statute.  *Montgomery*

---

Regardless, O.C.G.A. § 13-1-13 states that the doctrine precludes a recovery of a payment even if it was "made through ignorance of the law."  O.C.G.A. § 13-1-13.

[4] *Williams v. Bell*, 126 Ga. App. 432 (1972) cited by the County on page 20 of its Response also is inapposite.  That case involved a private residential sales contract and did not involve the voluntary payments doctrine.

*Cnty*, 261 Ga. App. at 391. *Montgomery County* held that the voluntary payments doctrine applied in its case to preclude the plaintiff's recovery of payments it made to the defendant because, as here, the payments were not made under an illegal contract. *Id.*

The County's argument that the jury must decide whether the voluntary payments doctrine applies also is incorrect. *Gulf Life Insurance Company v. Folsom*, cited by the County, held only that a "weighing of the equities between the parties by the trier of fact" is necessary where a plaintiff claims that he "mistakenly made" a payment due to his "lack of diligence or his negligence in ascertaining the true facts." 256 Ga. 400, 406 (1986). Here, the Amended Complaint does not allege that the County made the Option Price or Extension Period Price payments by mistake. In fact, the County's Response admits it is not making such a claim. Dkt. 68 at p. 20 ("the County is not seeking to undo a payment made to Union Carbide on the grounds that it was paid by mistake or due to misunderstanding"). Thus, *Gulf Life Insurance Company* is inapplicable to this case. *See, e.g.*, *Kuchenmeister v. Healthport Techs., LLC.*, 753 Fed. Appx. 794, 799 (11th Cir. 2018) ("*Gulf Life Co.* addressed only whether a plaintiff could recover a payment made by mistake, either due to a lack of diligence or to negligence in failing to discover the true facts. In contrast, this case involves no mistaken payment. . . . The circumstances involved in *Gulf Life Co.* are, thus, distinguishable from this case."); *Putnam-Greene Fin.*

*Corp. v. AT&T Corp.*, No. 3:19-cv-177-TCB, 2020 U.S. Dist. LEXIS 68553, at \*8 (ND. Ga. Apr. 20, 2020) ("the exception at issue in that case applies only where there is an allegation that the plaintiff made the payments under a mistake of fact"); *Cotton v. Med-Cor Health Info. Solutions*, 221 Ga. App. 609, 612 (1996) (distinguishing *Gulf Life Ins. Co. v. Folsom* and affirming dismissal based on the voluntary payments doctrine); *Time Ins. Co. v. Fulton-Dekalb Hosp. Auth.*, 211 Ga. App. 34, 36 (1993) (stating, "*Folsom* does not mandate that every claim for money had and received must be presented to a jury," and affirming dismissal under the voluntary payments doctrine).

Lastly, contrary to the County's claim, the voluntary payments doctrine is not an "affirmative defense." The party seeking to recover payments made "bears the burden of establishing the inapplicability of the voluntary payments doctrine." *Ameris Bank v. Lexington Ins. Co.*, No. CV413-241, 2017 U.S. Dist. LEXIS 155148, at \*11 (S.D. Ga. Sept. 21, 2017); *accord Montgomery Cnty.*, 261 Ga. App. at 390. And where a plaintiff fails to allege such facts sufficient to establish the doctrine's inapplicability, a claim for money had and received should be dismissed. *E.g.*, *Kuchenmeister v. Healthport Techs., LLC*, 309 F. Supp. 3d 1342, 1347-48 (N.D. Ga. 2018), *aff'd* 753 Fed. Appx. 794, 798-99 (11th Cir. 2018); *Cotton*, 221 Ga. App. at 611-12.

**C.** **The Amended Complaint Admits that the County Received the Bargained-For Benefits Under the Option Agreement, and UCC Was Not Unjustly Enriched.**

For its unjust enrichment claim, the County argues that it "never received the benefit of the option right or the opportunity to purchase the Property." Dkt. 68 at p. 17. That cannot be a serious claim. The Amended Complaint and the Option Agreement show that the County received those very benefits under the Option Agreement. Dkt. 58 ¶ 5 (the County received "the exclusive right—for an initial option period of two years—to purchase the Property for the total agreed upon price of $4,800,000"), ¶ 6 ("the option period for Camden County to purchase the Property was extended through April 23, 2022" by amendments to the Option Agreement), ¶ 8 (the County received "option rights to purchase the Property"), ¶ 38 (the Option Agreement required UCC to "keep[] the Property off the market" and gave the County "the option to purchase the Property"); Dkt. 53-2 at pp. 1, 6 (§§1, 2, 3, 5 (ii)); Dkt. 53-3 at p.1 (§ 3); Dkt. 53-4 at p. 2 (§ 3.A); Dkt. 53-5 at p. 2 (§ 3.A); Dkt. 53-6 at p.1 (§ 3.A); Dkt. 67-1 at pp. 1, 6 (§§1, 2, 3, 5 (ii)); Dkt. 67-3 at p. 1 (§ 3); Dkt. 67-4 at p. 2 (§ 3.A); Dkt. 67-5 at p. 2 (§ 3.A); Dkt. 67-6 at p. 1 (§ 3.A).[5]

---

[5] The County's arguments that "discovery may show that Union Carbide profited by holding the Property for seven years, or that Union Carbide had no intention of selling the Property during that time period" are red herrings. Dkt. 68 at p. 18 n. 3. Whether UCC somehow profited from holding the Property during the Option Period is not a factor in an unjust enrichment claim. Nor is whether UCC had an intention of selling the Property during the Option Period. The County still received the benefits of having the exclusive option to purchase the Property for the 2015

Also, the County's claim that it is entitled to a return of the payments it made to purchase those option rights ignores the very nature and terms of the Option Agreement, as discussed UCC's Motion.[6]  *Id.*; Dkt. 67 at p. 17.  The County got exactly what it bargained for in return for purchasing the Option Agreement:  the exclusive right to purchase the Property during the Option Period and UCC's obligation to keep the Property off the market for the County to exercise that right during those years.  Through the Referendum, *the County* elected to repudiate the option right it had for almost seven years under the Option Agreement and not purchase the Property.  An optionee does not get the price it paid for an option back because it fails to exercise its option right to purchase a property.   Because the County received the bargained-for benefits under the Option Agreement, it has no viable unjust enrichment claim in this case.

---

Purchase Price and UCC's obligation to keep the Property off the market during the entire Option Period under the Option Agreement.

[6] Also, the County's reference (in footnote 2 of its Response) to UCC's argument in its Motion to Dismiss the County's original Complaint that the County's failure to comply with O.C.G.A. § 36-10-1 rendered the Option Agreement unenforceable in support of its unjust enrichment claim is another red herring.  Under the doctrine of voluntary payments (O.C.G.A. § 13-1-13) a county cannot recover money it paid on a contract that is unenforceable pursuant to O.C.G.A. § 36-10-1. *Montgomery Cnty. v. Sharpe,* 261 Ga. App. 389, 390-91 (2003); *Twiggs v. Oconee Elec. Mbrshp. Corp.,* 245 Ga. App. 231, 233 (2000); *see also Cotton,* 221 Ga. App. at 612 ("a party is not entitled to the recovery of restitutionary damages for unjust enrichment where there has been a voluntary payment of the money received"); *Kuchenmeister,* 753 Fed. Appx. at 798-99.

12

Moreover, the County has not alleged facts showing that UCC's receipt of the Option Price and Extension Period Price payments was unjust. As the Amended Complaint admits, UCC received those payments as compensation for keeping the Property off the market and giving the County the exclusive option to purchase the Property at the 2015 Purchase Price, without any obligation to do so, for almost seven years. Those admitted facts do *not* show an unjust enrichment of UCC. Rather, they show that UCC justly received the bargained-for compensation to which it was entitled under the Option Agreement. Indeed, *the County* would be unjustly enriched if UCC were required to return those payments to the County. In such circumstances, the UCC would have kept the Property off the market and given the County an exclusive option to purchase it for almost seven years without UCC receiving any compensation for doing so. *That* result would be unjust.

## III.   CONCLUSION

No statute or law precluded the Option Agreement or the County's payments of the Option Price and Extension Period Price when the County made them. As the Amended Complaint admits, the Option Agreement and those payments were legally authorized at that time. Therefore, the County has no legal grounds to demand that UCC return those payments. Moreover, the voluntary payments doctrine precludes that demand, and the County's argument that the Referendum retroactively

invalidated the Option Agreement to require UCC's return of the payments violates the Georgia Constitution.

The County also received the bargained-for benefits that it purchased under the Option Agreement: the exclusive right to purchase the Property during the Option Period and UCC's obligation to keep the Property off the market for the County to exercise that right during those years. The County therefore has no viable unjust enrichment claim under Georgia law.

For these reasons, the County's Amended Complaint should be dismissed.

[signature on following page]

Respectfully submitted this 6th day of June, 2023.

/s/ *Clay Massey*
W. Clay Massey
Georgia Bar No. 476133
Clay.massey@alston.com
*Admitted Pro Hac Vice*
Douglas S. Arnold
Georgia Bar No. 023208
Doug.arnold@alston.com
*Admitted Pro Hac Vice*
Shannon N. Vreeland
Georgia Bar No. 472552
Shannon.vreeland@alston.com
*Admitted Pro Hac Vice*

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Office: (404) 881-7000
Fax: (404) 881-7777

*-and-*

James A. Bishop
Georgia Bar No. 058600
*jbishop@bishopfirm.com*
THE BISHOP LAW FIRM
465 Sea Island Road
St. Simons Island, GA 31522
Telephone: (912) 264-2390
Facsimile: (912) 264-5859
jbishop@bishopfirm.com

*Counsel for Defendant Union Carbide*
*Corporation*

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| CAMDEN COUNTY, a political subdivision of the State of Georgia, by and through the Camden County Board of Commissioners, | |
| Plaintiff, | Civil Action No. 2:22-cv-00077-LGW-BWC |
| v. | |
| UNION CARBIDE CORPORATION, | |
| Defendant. | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I served the foregoing REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT via the Court's CM/ECF filing system, which will automatically send electronic notice to all attorneys of record.

This 6th day of June, 2023.

/s/ *Shannon Vreeland*
Shannon Vreeland